UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FOR MAILING BY _____
C/O ON 5/18/20
PROVIDED TO TOMOKA

ERIC K. BROOKS,
 Plaintiff,

VS.                                              Case No: 4:19cv0524-MW/MAF

OFFICER DAMON MILLER,
   Defendant,
_____/

### OBJECTION TO DEFENDANT'S MOTION TO STAY DISCOVERY PENDING RULING ON MOTION FOR SUMMARY JUDGMENT (Doc.19)

COMES NOW THE PLAINTIFF, Eric K. Brooks, Pro-se and files his Objection to Defendant's Motion to Stay Discovery (Doc.19), in support of which he enters the following:

Defendant Miller's counsel Hannah D. Monroe is challenging this Court's order (Doc.18) to prevent Plaintiff Brooks from completing discovery, as is his right by Fed.R.Civ.P. and as this court has authorized. Further, counsel has not cooperated with the rudimentary requirements of discovery, as previously outlined in Plaintiff's First Motion to Compel Discovery and his First Declaration in support thereof; instead choosing to file a premature Motion For Summary Judgment capitalizing on the discovery problems Plaintiff is facing from both FDOC staff and her own willful non-compliance with the rules of discovery.

While this court has already ruled that discovery will be allowed to reach its scheduled conclusion, at which time Plaintiff can file his Opposition to Defendant's Motion For Summary Judgment, Defendant's counsel again asks this court to shut down discovery in service to her nebulous assertions that her MOTION FOR SUMMARY JUDGMENT will prove dispositive of the whole case.

Plaintiff is now compelled to mount a Preview of his opposition to summary Judgment to counter this strategy, wasting valuable time and this Court's resources relitigating a decision already rendered. Counsel asserts that her client's unsupported utterances remove the possibility of any genuine issues of material fact being found within Brooks' Complaint, (Doc. 1). She also maintains that Miller is entitled to Qualified immunity from suit.

While Plaintiff does not intend to transgress any Local Rule[1] regarding the Defendant's 'Statement of Facts' (Doc. 17, pp. 2-4), to avoid the risk of any portion being deemed admitted Plaintiff now rebuts the misrepresentations that Defendant's counsel has styled "undisputed facts".

I. Summary Judgment is not appropriate because there are genuine issues of material facts in dispute.

Plaintiff Brooks filed a sworn verified Complaint to commence this 1983 action; thus, his correct description of the events of November 12, 2016 already creates genuine issues of material facts in dispute at each point at variance with Defendant Miller's account. Under the subtitle Memorandum of law (Doc 17, p. 1) Counsel has furnished the narrative of Miller's Probable Cause Affidavit, Bates #52, (henceforth "PCA") entered into the record as Defendant's [Exhibit A], as the basis for the Statement of Undisputed Facts, even incorporating Miller's misspelled words (e.g. 'Terrance') and malapropisms (e.g. 'omission' for 'admission') (Ibid. lines 15 and 20).

Next, counsel down plays the eventual dismissal of the two resultant felony charges "against Mr. Brooks in exchange for his plea in a unrelated felony case", entering the Nolle Prosequi paper into the record as Defendant's [Exhibit B]. Plaintiff is prepared to submit the full plea-bargain colloquy when appropriate; it is clear that the State attorney made the proffer to Brooks to clear their books of two problematic cases. If any inference should be drawn from their declining to

---

[1] Due to the continuing medical Quarantine of Plaintiff's housing unit and the shutdown of TCI inmate law Library services due to the COVID-19 Pandemic, Plaintiff cannot timely access the local Rules or other research materials as of this filing.

prosecute Brooks, it is that these cases had such glaring faults they were deemed to be unwinnable at trial.

Finally, there is the matter of the MAVRIC video #100711, entered in the record as Defendant's Exhibit [C]. Plaintiff objects to any consideration of an item of evidence which he has previously requested in discovery and which Defendant's counsel has failed to furnish in a timely manner for Plaintiff to review. Her assertions as to what the video and audio portions portray cannot be accepted at face value. In the sole reference to the audio recording found in summary judgment is the alleged comment by Miller purporting to protect Brooks from numb hands due to tight handcuffs. Counsel would have this court believe it was said out of genuine concern for Brooks' well-being; Brooks maintains it was a pretextual cover for the fact that Miller had already over-tightened Brooks' handcuffs to the point of injuring him.

All three of Defendant's Exhibits are open to interpretation, but Counsel does not want Plaintiff to provide any context or rebuttal, much less complete discovery, instead making unsubstantiated conclusory statements. Plaintiff's second Declaration makes clear that Defendant Miller's version of events is pretextual and intended to cover up several criminal acts including the tortious behavior alleged in Brooks' sworn Complaint and Second Declaration.

The following assertions derived from Miller's probable cause Affidavit appear as "undisputed facts" in Defendant's Motion For Summary Judgment (Doc. 17) and are then cited by counsel in the Motion to Stay Discovery as proof that Miller had probable cause to stop Brooks and arrest him, overcoming Brooks' Count 1 for false arrest. (Doc 19, P. 5, lines 3 through 14): First, he alleges that he was patrolling the area of 2516 Golf Terrace when he observed Eric Brooks driving a black KIA; that he followed Brooks to 2516 Golf Terrace; that he approached Brooks and had a "consensual encounter"; that Brooks stated he did not have a valid license; that "omission" (sic) gave him probable cause to arrest Brooks for driving without a valid driver's license; and that he lawfully searched Brooks because he was under arrest, at which point he allegedly found a piece of crack cocaine on Brooks' person.

The following facts are material and genuinely indisputed:
1. Miller was not merely "patrolling in the area of 2516 Golf Terrace", rather he was dispatched there. See Tallahassee Police Department Incident Report, Bates # 226, Plaintiff Exhibit A.

3.

2. Plaintiff Brooks was not "Driving a black KIA" as Miller claims to have observed; rather, Mr. Brooks arrived at the area on foot well before Miller. See Plaintiff's Second Declaration #3.

3. Miller did not follow a black KIA down Golf Terrace; rather the KIA was parked in the street prior to Miller's arrival. See Second Declaration, #5.

4. Miller's reason to turn down a dead-end street was not because he was following a black KIA; rather, he was specifically dispatched to investigate "drug activity." See TPD Incident Report, Bates #226-27, Exhibit A.

5. Miller's question, "Who was Driving the Black KIA?" contradicts his assertion that he "observed Brooks driving a black KIA". See Second Declaration, #7.

6. Having not been driving the black KIA, Brooks freely admitted that he had no driver's license. See Second Declaration #8.

7. Miller's interview of Brooks was not "consensual;" when Brooks tried to terminate the encounter, Miller assaulted, handcuffed, slammed and searched Brooks without his consent. See Second Declaration # 8 and 9.

The above numbered facts in dispute are by no means an exhaustive list, yet more than enough to show that summary judgment is not appropriate and that Defendant Miller is therefore not "entitled to judgment as a matter of law". (contra Doc. 17, lines 1 and 2).

## II. OFFICER Miller did not have Probable cause to arrest Plaintiff Brooks

Defendant Miller's actions center around his claim that he observed Brooks driving a Black KIA and that Brooks freely admitted having no valid driver's license. Brooks vehemently denies driving the KIA or any other vehicle, so had no reason to lie to Defendant Miller about having no driver's license. Miller's account contains many troubling discrepancies which will now be reviewed for this court's consideration, but put simply, Defendant Miller created his account of Plaintiff's alleged traffic violation as a pretextual cover for his criminal misconduct during his encounter with Brooks. Miller left a paper trail of falsified state documents, beginning with the Probable Cause Affidavit (Defendant's [Exhibit A]). Plaintiff cannot properly address all of Miller's false entries without being allowed to complete the discovery to which he is entitled by Fed. R. Civ. P. and which this court has authorized, but even cursory examination of the PCA shows the entry of a Florida driver's license # B620211732820 in the box for driver's license #,

4.

despite Miller's repeated assertions under oath that Brooks did not have a valid driver's license and never had one. See PCA, Bates #51-52; Doc. 17, P.3 lines 10 and 11; Doc. 19, P.5, lines 4 through 6. Defendant counsel adopted Miller's assertion, contained in the summary of the PCA at Bates #52, as one of her "undisputed facts" in her Motion For Summary Judgment, P-3, lines 10 and 11.

Miller's decision to enter another person's driver's license # into the sworn PCA is no mere harmless error. Miller wrote the falsified probable cause affidavit, the Tallahassee Police Department Incident Report (Plaintiff Exhibit A) and the Florida Uniform Traffic Citation (henceforth "FUTC"; Plaintiff's Exhibit B) all within 63 minutes of the time he first saw Brooks. Each of these documents contains false entries or directly contradicts Miller's sworn testimony or the known facts of the case. Together, they are evidence of a hastily-constructed pretextual cover-up of Miller's lack of lawful probable cause to detain or arrest Brooks. Lacking probable cause, all of Miller's subsequent acts are unlawful and tainted. Further, Defendant's counsel now seeks to block Plaintiff's Second Interrogatories For Damon Miller, Plaintiff's Second request For Production of documents, and Plaintiff's First request For Admissions because they are likely to produce additional inculpatory evidence against her client, despite this Court's clear order directing the completion of discovery.

In addition to the as-yet unidentified driver's license # Miller inserted into his falsified PCA, he alleges that an officer "Wirght"(sic) field-tested the alleged crack cocaine Miller claims to have taken from Brooks, but there is no report, field-test result, or any evidence whatsoever provided by Defendant to support Miller's bold claim, nor any chain of evidence other than a receipt that Miller turned in something that same day. See Receipt, Bates #230, Plaintiff's Exhibit C. As noted above in Plaintiff's listing of material facts in dispute, Facts 1 and 3 describe assertions Miller made under oath, yet which are contradicted by Miller's TPD Incident Report (Plaintiff's Exhibit A). In that same incident report, Miller lists Brooks' "Suspect Characteristics" as "drug activity" rather than providing conventional identifying marks. Miller also inadvertently confirms that the vehicle Brooks was supposedly seen driving was in fact already parked when, under "Premise Type" he lists

5.

"residential" rather than describing a street or road way where the traffic violation of Driving without a valid license would presumably occur.

Miller also authored a FUTC with false entries as part of his pretextual cover-up which he swore he delivered to Brooks. See Plaintiff's Exhibit B, Bates #55. It was never delivered. See Plaintiff's Second Declaration, #17. Miller made the FUTC out to an Eric C. Brooks; that is not Plaintiff's legal name or an alias. Miller said Eric C. Brooks lived at Plaintiff's residence, but supplied a different zip code unknown to Plaintiff. Miller said Eric C. Brooks had a class E license with no endorsements that expired in 2018, yet has repeatedly sworn that Plaintiff has no valid license and never did. Finally, Miller gave Eric C. Brooks' height as 5'4"; Plaintiff is 5'6. Miller did incorporate Plaintiff's street address and traffic violation into the FUTC, however, linking Plaintiff to it.

When asked in <u>Plaintiff's First Interrogatories</u> #5 why he did not write a FUTC for Plaintiff's criminal traffic offense which was the alleged basis for the ensuing arrest, assault, search, and 349-day stay in the Leon County Jail, Miller responded "an additional civil ticket was not required." This is a false statement, as Miller knew: Florida Traffic Court Rules rule 6.165(a), <u>Uniform Traffic Citation</u> states:

"All prosecutions for criminal traffic offenses by law enforcement officers shall be by uniform traffic citation as provided for in Section 316.650 Florida Statutes..."

The FUTC being another state document, the numerous falsified entries are evidence that Defendant Miller freely committed the felony of falsifying state documents. They are also persuasive when considering Defendant's veracity. In summary of Argument II, Miller's unsupported testimony, rebutted by Plaintiff's sworn statements and refuted or contradicted by Miller's various conflicting stories, cannot be accepted as lawful probable cause for his arrest of Plaintiff Brooks.

III. Officer Miller's use of force was a criminal assault on Plaintiff Brooks.

Defendant Miller's probable cause to arrest Brooks having been placed in question, if not dispelled entirely, the use of force must be left for the fact finder. Defendant's counsel

asserts that "no Force was used and any "Force" applied was de minimis and reasonable under the circumstances." Doc. 17, P.2 lines 5 and 6; Doc. 19, P.5, lines 15 through 20 and P.6, lines 1 through 4. In Thornton v. City of Macon, 132 F. 3d 1395 (11th cir 1998) we find..."the Proposition that any Force used in an unlawful arrest is excessive Force sufficient to give rise to a Fourth Amendment Claim". Brooks has Provided sworn testimony that he was not driving the Black KIA and that Miller assaulted him by grabbing his arm when Brooks tried to walk away From the alleged "consensual encounter", then slamming Brooks into the squad car. Plaintiff's Second Declaration, #8. Miller later maliciously overtightened Brooks' handcuffs. Ibid., #12. Plaintiff's sworn testimony defeats Defendant's unsupported allegations and Counsel's Claim that Miller is "entitled to Qualified immunity on Plaintiff's Claim of excessive Force (count II)." Doc. 19, P.5 lines 3 and 4.

IV. Plaintiff can and will show deliberate indifference by Officer Miller to Plaintiff's requests For serious medical care For the injuries which Miller dealt to him.

Plaintiff has adequately alleged in his sworn complaint and Plaintiff's Second Declaration that he experienced lasting and Severe Pain From Miller's assault, and /or overtightened handcuffs, including but not limited to swelling, numbness, loss of Full use and range of motion of his hands and wrists, and Pain lasting For weeks after Miller's unlawful arrest. See Complaint (Doc. 1, P.5 (V) 5-6; P.6, (V) 9 through 14; P.7, 26; P.8, 33; P.9, 35 through 37) and Plaintiff's Second Declaration, #12 through 16. Miller ignored Plaintiff's Pleas that he loosen the handcuffs, or obtain medical attention For him. Ibid. Through discovery Plaintiff anticipates obtaining by subpoena, records From the Leon County Jail and their medical staff and/or health care Provider which will bolster Plaintiff's description of the type and extent of his injuries. Plaintiff respectfully submits that he has Pled the requisite elements to Prove he did need medical care, and that Defendant Miller was indifferent to his need For same.

V. Officer Miller is not entitled to Qualified immunity because Plaintiff has Properly alleged several violations of his Constitutional Rights.

7.

In arguments I - IV, supra, Plaintiff has rebutted and/or refuted the conclusory statements which Defendant's counsel has posited to support Deffendant's Motion For Summary Judgment. Within those rebuttals, Plaintiff has alleged that Deffendant Miller arrested Plaintiff without Probable cause, assaulted him, searched him unlawfully, inflicted pain maliciously by overtightening his handcuffs, and denied him medical care for the resulting injuries. None of those acts fall within the scope of Miller's employment; each and every one states a claim for violation of Plaintiff's constitutionally and statutorily protected rights under the fourth, eighth, and fourteenth amendments of the U.S. Constitution. Miller's proven willingness to file falsified state documents and reports casts grave doubts on his veracity and motives. Regardless, as the non-moving party, Brooks' sworn accounts must be viewed in the light most favorable to him for purpose of summary judgment; that there is a genuine dispute of material facts can no longer be in doubt. Accordingly, Defendant Miller has waived his protection under qualified immunity from Plaintiff's properly pled complaint.

 Plaintiff respectfully reminds this court that he continues to be denied access to the institutional law Library, which denial impedes and frustrates his efforts to respond fully and properly to Defendant's pleading, and, having no access to the local rules, begs this court's indulgence in matters of form and format. To that end, Plaintiff has written to the Clerk of the court asking for such standard local forms and rules as the Clerk may be willing to provide him as a Pro-se litigant under extraordinary hardship. Plaintiff is also pursuing administrative relief through the inmate grievance system to force FDOC to provide adequate access to essential law library services. As quickly as the law Library Prepares the copies of Plaintiff's Exhibits A, B, and C, they will be forwarded to this court to support this motion. Plaintiff anticipates filing this <u>Appendix</u> by May 22, 2020, via US Mail.

WHEREFORE, all premises considered, Plaintiff respectfully moves this court to strike Defendant's MOTION TO STAY Discovery Pending Ruling on Motion For Summary Judgment; to allow Plaintiff to complete discovery as allowed by this court's order (Doc. 18); and to issue any other orders as may serve to expedite completion of Plaintiff's discovery requests or serve the interests of Justice.

Respectfully Submitted,

Enclosure: Plaintiff's second Declaration (2 pages)

Eric K. Brooks
Eric K. Brooks, Plaintiff
X582151 Tomoka C.I.
3950 Tiger Bay Road
Daytona Beach, FL 32124-1098

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that I have furnished true copies of objections to Defendant's Motion to Stay Discovery and Motion For leave to File an Amended Complaint to Defendant's counsel, Hannah D. Monroe, Attorney, 300 S. Adams St. Box A-5, Tallahassee, FL 32301, by providing them to Prison mail officials for prepaid First Class U.S. mail on the 18th day of May, 2020.

Eric K. Brooks
Eric K. Brooks, Plaintiff

## PLAINTIFF'S SECOND DECLARATION

ERIC K. BROOKS declares under penalty of perjury:

1. I am the Plaintiff in this case. I make this affidavit in support of my <u>Objection to Defendant's Motion to Stay Discovery</u> (Doc. 19).

2. I am housed in B-dorm at Tomoka CI, Daytona Beach, FL, which has been and remains medically quarantined since April 11, 2020, due to the Covid-19 pandemic.

3. On November 12, 2016, I arrived at the area of 2516 Golf Terrace at 3:00 p.m. on foot, having walked approximately 2 miles from my residence at 3216 Jim Lee Rd., Tallahassee, FL, 32301.

4. I was standing among a group of 8-12 African-Americans of both sexes at 2516 Golf Terrace when I observed a marked Tallahassee Police Department squad car turn off Putnam Street onto Golf Terrace.

5. The squad car pulled in behind a black KIA which was parked in the street at the end of Golf Terrace; the owner of that car, Early Denson, was sitting in the passenger seat of the KIA.

6. A uniformed officer whom I later learned was Defendant Damon Miller got out of the squad car and began walking towards the group of people I was standing with.

7. The group began to disperse in different directions as Officer Miller approached; when I turned to walk away, he asked, "Who was driving that black KIA?", or words to that effect.

8. I responded that I didn't know who was driving it and he asked me if I had a Florida driver's license. I said I did not and tried to walk away again and Defendant Miller grabbed my arm, threw me against his squad car, and handcuffed me.

9. Miller searched me after handcuffing me and found an alleged piece of crack cocaine.

10. He asked me if it was mine and I told him I didn't know where it came from.

11. Miller then put me in the back of the squad car, where I sat for about 15 minutes.

12. Miller deliberately overtightened the handcuffs before putting me in the car; my hands began throbbing and swelling painfully almost immediately.

13. During the 15-minute drive to the Leon County Jail I complained about the pain in my hands and arms, but Miller ignored my complaints.

14. When I arrived at the Leon County Jail my hands were so swollen that the deputies in Book-In took them off as soon as they saw my obvious distress.

15. I complained to Medical staff in Book-In about the severe pains in both my hands and wrists caused by the handcuffs.

16. Over the next few weeks I repeatedly complained to Leon County Jail medical staff about pains and spells of numbness in my hands and wrists; I received pain medication for approximately 2 months for those pains.

17. Miller never served me a copy of the Florida Uniform Traffic Citation, Bates #55.

I have read the foregoing Plaintiff's Second Declaration and by my signature affirm that it is true and correct.

_Eric K. Brooks_
Eric K. Brooks, plaintiff

May 18, 2020

Eric Brooks 582151
Tomoka Correctional Institution
3950 Tiger Bay Road
Daytona Beach, Florida
32124

MAILED FROM A STATE
CORRECTIONAL
INSTITUTION



ZIP 32124 $ 000.80⁰
02 4W
0000360581 MAY 19 2020

CHECKED ... 22 2020

United States District Court
Northern District of Florida
Office of The Clerk
111 North Adams Street, Suite 322
Tallahassee, Florida 32301-7730