IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

Provided To _TOMOKA CI_
On _8/7/20_ _AM_
For Mailing, by _E. Br_

**ERIC KEITH BROOKS,**

    **Plaintiff,**

**v.**                                                    **Case No. 4:19-cv-524-MW/MAF**

**OFFICER DAMON MILLER,**

    **Defendant.**

_____/

## PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

COMES NOW the Plaintiff, Eric Keith Brooks, *pro se*, pursuant to Rule 56 Fed R. Civ. P. and Local Rule 56.1 N.D. Fla., and enters his opposition to Defendant's motion for summary judgment ECF No. 17, in support of which he offers the following.

## STATEMENT OF THE CASE

Defendant admits that Plaintiff Brooks has sued him in his individual and official capacity for damages under 42 U.S.C. § 1983, alleging that Defendant Miller violated Brooks' Fourth, Eight, and Fourteenth Amendment rights on November 12, 2016. ECF No. 17, p. 1. Defendant asks that the Court grant summary judgment on Plaintiff's claims for "false arrest, excessive force, and "denial of medical care."" Ibid. Defendant has failed to address Plaintiff's claims of illegal search and seizure (ECF No. 1, pp. 6, 8); they are admitted for purposes of summary judgment.

FILED USDC FLND TL
AUG 12 '20 PM3:37

Defendant Miller is not entitled to summary judgment because there are genuine issues of material facts in dispute. Defendant Miller is not entitled to qualified immunity because he knowingly violated Plaintiff's well-established constitutional rights. Defendant Miller had no probable cause to detain Plaintiff, search him, and/or arrest him. Defendant Miller used unreasonable and excessive force in arresting Brooks; that same force injured Brooks and led to Defendant denying Brooks' pleas for medical attention.

## MEMORANDUM OF LAW

Pursuant to Local Rule 7.1(A), Plaintiff Brooks provides the following memorandum of law in support of his Opposition to Summary Judgment.

## A. STATEMENT OF FACTS

Plaintiff will demonstrate from the record in the Argument below that Defendant's "Statement of Undisputed Facts" (ECF No. 17, p. 2) is a summary of Miller's Probable Cause Affidavit, henceforth "PCA," entered as Defendant's Exhibit A; that virtually all of those assertions are genuine issues of material facts in dispute; and that Miller's PCA is the keystone to Defendant's claims to qualified immunity and summary judgment.

Each of Defendant's disputed material facts will be rebutted in the appropriate subsection below. The following facts are undisputed: after Brooks was handcuffed he freely admitted he had no valid driver's license and had never had one; that Miller read him his *Miranda* rights after the search; that Miller transported Brooks to the Leon Country Detention Center; and that the State Attorney dismissed the charges 346 days after the November 12, 2016, arrest date. ECF No. 17, pp. 2-4.

All other facts are in dispute; Plaintiff objects to their characterization as "undisputed facts" and hereby rejects and denies Defendant's remaining assertions in toto. *Ibid.* Defendant's

subjective interpretation of the MAVRIC dash-cam video is rejected out of hand. ECF No. 17, p. 4. Plaintiff will cite to the specific contents of Defendant's Exhibit C to show what the audio and video tracks prove or disprove.

**B. Standard of Review**

On a motion for summary judgment the defendant initially has the burden to demonstrate an absence of evidence for plaintiff's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If he does so, the burden shifts to the plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact. *Ibid.* "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris,* 550 U.S. 372, 380 (2007)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986)).

Plaintiff Brooks recognizes that as a pro se litigant and the non-moving party, factual inferences must be viewed in the light most favorable to him, and his complaint is entitled to liberal interpretation; however, he does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford,* 906 F. 2d 667, 670 (11th Cir. 1990(cited in *Pearson v. Byrd,* LEXIS 86041 M.D. Alabama 2007). The Defendant also cites *Scott* as precedent for this Court's review of Defendant's Exhibit C, the MAVRIC dash-cam video.

The Court must resolve all issues of disputed facts concerning qualified immunity in favor of the non-moving party (i.e. the Plaintiff, in the instant case). *Sheth v. Webster,* 145 F. 3d 1231 (11th Cir. 1998).

Defendant Miller erroneously directs this Court to follow the *Saucier* sequence in analyzing the question of qualified immunity. ECF No. 17, p. 7, lines 11-14. *But see Pearson v.*

3

*Callahan* (2009): "while the *Saucier* sequence is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan,* 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565, 2009 US LEXIS 591, Headnote 6. "...when qualified immunity is asserted at the pleading stage, the answer to whether there was a violation may depend on a kaleidoscope of facts not yet developed." *Ibid.* at holding 1(c)(ii). This is relevant where Defendant has persuaded this Court to curtail discovery while failing to respond to Plaintiff's timely-filed good-faith discovery requests.

If a defendant was not acting within his discretionary authority, he would not be able to claim the benefits of qualified immunity. *Lee v. Ferraro,* 284 F. 3d 1188, 1194 (11th Cir. 2002).

To overcome qualified immunity, Plaintiff must demonstrate that Defendant Miller's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *GJR Investments, Inc. v. County of Escambia,* 132 F. 3d 1359, 1366 (11th Cir. 1998); *Storck v. City of Coral Springs,* 354 F. 3d 1307, 1314 (11th Cir. 2003).

The Fourth Amendment encompasses the "right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro,* 284 F. 3d 1188, 1197 (11th Cir. 2002)(cited in *McKnight v. Garriott,* LEXIS 195489 (M.D. Fla. 2018). Whether the force used is reasonable turns on the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989). "[T]he question we ask is whether, under [the plaintiff's] version of the facts, [the officer] behaved reasonably in the light of the circumstances before him." *Galvez v. Bruce,* 552 F. 3d 1238, 1243 (11th Cir. 2008)(citation and internal quotation marks omitted), quoted in *McKnight* at LEXIS 18.

4

Plaintiff, at the time of the incident, was not a convicted prisoner. Thus, his rights did not arise under the Eight Amendment. However, in practical effect, Plaintiff's claims regarding the denial of medical care are subjected to the same minimum standard of care as that allowed by the Eight Amendment. *Cook ex rel. Tessier v. Sheriff of Monroe County, Fla.,* 402 F. 3d 1092, 1115 (11th Cir. 2005). Therefore, this Court must give these Fourteenth Amendment claims the same scrutiny as if they were brought under the Eight Amendment. *Melton v. Abston,* 841 F. 3d 1207, 1220 (11th Cir. 2016)(citing in *McKnight,* 2018 U.S. Dist. LEXIS 19).

To establish deliberate indifference to a serious medical need, Plaintiff must shoulder three burdens; he must satisfy the objective component (showing he had a serious medical need), the subject component (showing the official acted with deliberate indifference to his serious medical needs), and causation (showing the injury was caused by the Defendant's wrongful conduct). *Goebert v. Lee County,* 510 F. 3d 1312, 1326 (11th Cir. 2007)(citing in *McKnight, Ibid.*); *see also Taylor v. Adams,* 221 F. 3d at 1258.

## C. Argument

Before addressing Miller's rationale for invoking qualified immunity, Plaintiff directs this Court to his complaint, ECF No. 1, p. 5, #7; p. 6, #16; p. 7, #24-25; p. 8, #30. Plaintiff properly pleaded that Defendant Miller illegally searched him and seized an item Miller alleged was crack cocaine. *Ibid.* Plaintiff's Fourth Amendment rights to be free of warrantless search and seizure are clearly established; likewise, in Article I, 12 of the Florida Constitution. *See Beck v. State of Ohio,* 379 U.S. 89, 13 L. Ed. 2d 132, 85 S. Ct. 223 and *Crawford v. State of Florida,* 980 So. 2d 521 (Fla. App. 2007). Miller has not moved for summary judgment on the illegal search and seizure; therefore he has waived his right to do so. See ECF No. 17, generally;

*Carvell v. Kinsey,* 80 So. 2d 577, 579 (Fla. 1956), quoted in *City of Deland v. Miller,* 608 So. 2d 121, 122 (Fla. 5 DCA 1992).

## 1. Defendant Miller is Not Shielded From Suit Under the Doctrine of Qualified Immunity

Defendant Miller has asserted that he is entitled to qualified immunity because his conduct violated "no clearly established statutory or constitutional rights of which a reasonable person would have known." *Post v. City of Fort Lauderdale,* 7 F. 3d 1552, 1556 (11th Cir. 1993); ECF. No. 17, p. 6. He claims his actions were "objectively reasonable," shielding him from Brooks' Fourth Amendment claims. *Graham,* 490 U.S. 396 (1989); *Ibid.*

However, "[Q]ualified immunity is, as the term implies, qualified. It is not absolute. It contemplates instances in which a public official's actions are not protected." *Kingsland v. City of Miami,* 382 F. 3d 1220, 1233; 2004 U.S. App. LEXIS 18409 (11th Cir. 2004). ""The agents in *Post* simply made a good-faith mistake, whereas here, the officers' conduct creates factual issues as to their honestly and credibility." *Id.*

"The non-movant's response must be tailored to the method by which the movant carried its initial burden." *Hinson v. United States,* 55 F. Supp. 2d 1376, 1380 (S.D. Ga. 1998), *aff'd,* 180 F. 3d 275 (11th Cir. 1999). Accordingly, Miller knew or should have known that Brooks had a clearly established Fourth Amendment right to be free from false arrest: "It is clearly established that an arrest made without probable cause violates the Fourth Amendment." *Von Stein v. Brescher,* 904 F. 2d 572, 579 (11th Cir. 1990)(quoted in *Kingsland,* 382 F. 3d at 1232). Brooks had a clearly established right to be free from Miller's use of excessive force: "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *See Graham,* 490 U.S. 386 at 394-95 (quoting in *Lee,* 284 F. 3d at 1197).

Likewise, Miller's assertions that his actions were "objectively reasonable" must be examined in light of the three factors outlined in *Graham*: "… the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (*Ibid.*, 384 F. 3d at 1197-1198).

The crime at issue is a non-criminal traffic infraction. Florida Statute § 318.14. Miller has made no showing, nor has he alleged, that Brooks posed any threat to himself or others, that Brooks actively resisted arrest, or that Brooks attempted to flee. Miller fails to satisfy the *Graham* factors and cannot claim qualified immunity under the objective reasonableness standard for the use of force.

Additional proof of Miller's ineligibility for qualified immunity follows below as Plaintiff refutes Miller's defenses, numbered 2, 3, 4, and 5 below.

### 2. Defendant Miller Had No Probable Cause to Arrest Plaintiff Brooks

The primary problem with Miller's arrest of Brooks is simply this: driving without a valid driver's license is a non-criminal traffic infraction. Florida Statutes § 318.14. An infraction is defined in Rule 6.040(k) Florida Rules of Traffic Court (2016) as "a **non-criminal** traffic violation that is not punishable by incarceration…" (emphasis added). Rule 6.040(i) defines a criminal traffic offense as "a violation that may subject a defendant upon conviction to incarceration." Fl. R. Traffic Court (2016). Miller gave sworn testimony that Brooks "was arrested for this criminal traffic infraction," in his response to Interrogatory #4. Plaintiff's Exhibit D, p. 2. Miller attempts to conflate "criminal traffic offense" and "infraction" (a non-criminal traffic violation) to conceal his violation of Brooks' clearly established statutory right to be free of arrest for a simple traffic violation where arrest is not permitted by Florida Statutes §

318.14.[1]  *Ibid.*  Miller cannot plead to a mistake of law: he is heard on the audio track of the MAVRIC video telling Brooks that if he hadn't found the alleged drugs on Brooks he would only have written a citation.  Defendant's Exhibit C at 23:26.  The statutory legality of Brooks' arrest is a material fact in dispute.  Further, "[i]n 2003, the Eleventh Circuit held that an officer's mistake of law can never provide the objective grounds for probable cause, even if the mistake of law is reasonable or grounded in good faith."  *United States v. Chanthasouxat,* 342 F. 3d 1271, 1277, 1279 (11th Cir. 2003)(cited in *Rance v. Mays,* LEXIS 193486, Footnote 9 (S.D. Fla. 2016).

Brooks also had a clearly established statutory right to be informed prior to any physical contact or actual restraint by the arresting officer of his authority to make the arrest, and the cause of arrest.  F.S. § 901.17 states, "A peace officer making an arrest without a warrant shall inform the person to be arrested of the officer's authority and the cause of arrest except when the person flees or forcibly resists before the officer has an opportunity to inform the person or when giving the information will imperil the arrest."  Miller did not inform Brooks of the cause of arrest until four and a half minutes after slamming Brooks into the side of the car and shouting, "Put your hands behind your back."  Defendant's Exhibit C at 2:17, 6:48.  Miller has never alleged that Brooks tried to flee or forcibly resist, nor has he shown that complying with Florida law would have imperiled the arrest.  ECF No. 17, passim.  Miller knew he was violating F.S. 901.  Plaintiff's Exhibit G, (I.B), IV A.

Miller alleged that "[A]s seen clearly on the video, during a lawful search incident to arrest, Officer Miller found an illegal substance—crack cocaine—on Plaintiff's person."  ECF

---

[1]  Chapter 74-377, Laws of Florida reads: <u>AN ACT</u> relating to the adjudication of traffic infractions; creating chapter 318, Florida Statutes, to be known as the "Florida Uniform Disposition of traffic **infractions** act."  (emphasis added).

No. 17, p. 8, lines 19-21. He then states he "had probable cause to arrest Plaintiff for that violation of law as well." *Ibid.,* p. 8, line 21, p. 9.

While Miller's first search of Brooks is captured on video (Defendant's Exhibit C at approx. 4:34 to 5:39), the lawfulness of that search is a material fact in dispute, as is the actual identity of the substance Miller found. Brooks has conclusively proven that Miller's decision to arrest him for a non-criminal traffic infraction, in violation of Florida law, renders that arrest invalid. The Florida Supreme Court examined a similar set of circumstances in *Doctor v. State,* 596 So. 2d 442, 446; 1992 Fla. LEXIS 502; 17 Fla. L. Weekly S 167 (Fla. 1992), finding that cocaine detected after an illegal traffic stop and ensuing pat-down of Doctor should have been suppressed because the initial stop was illegal.

> "In *Kehoe v. State,* 521 So. 2d 1094, 1096 (Fla. 1988), this Court observed that "when the police realize that they lack a founded suspicion, they sometimes attempt to justify a stop on some obscure traffic violation." We held that a stop will not be valid just because an officer could have lawfully made the stop because, "although it is the easiest test to follow, the Fourth Amendment constraints on intrusive searches and seizures transcend other concerns." *Id.* at 1097. We emphasized that: Allowing the police to make unlimited stops based upon the faintest suspicion would open the door to serious constitutional violations."

*Doctor,* 596 So. 2d at 446.

The Florida Supreme Court stated a more stringent rule: "This court, however, will not allow officers to get around the Fourth Amendment's mandate by basing a detention upon a pure pretextual stop. The State must show that under the facts and circumstances a reasonable officer would have stopped the vehicle absent an additional invalid purpose." *Kehoe,* at 1097 (quoted in *Doctor,* at 446).

Brooks' circumstances resemble Doctor's: in *Doctor,* officers of the Florida Highway Patrol were operating a drug interdiction program. *Id.* at 446. Miller stated he was on uniformed

9

patrol in the area of Golf Terrance.  Plaintiff's Exhibit D, #1.  The inference is that his encounter with Brooks was random.  However, Miller's Tallahassee Police Department Incident Report states he was dispatched there to investigate "drug activity."  Plaintiff's Exhibit A, p. 1.  In *Doctor,* "The officers conceded they had no reasonable suspicion of any criminal activity until after the stop when Doctor exited the vehicle and they saw the bulge."  *Doctor,* at 446.  Likewise, Miller has freely admitted that "he did not have a basis for a criminal stop" at the time he approached Brooks.  Plaintiff's Exhibit D, #11.

Other evidence of the pretextual nature of Miller's stop is found in Defendant's Exhibit C, the MAVRIC video.  Miller has stated under oath that he "followed the car as part of proactive policing and to initiate a consensual encounter."  Plaintiff's Exhibit D, #11.  Miller justified his arrest of Brooks based on an alleged admission obtained during this consensual encounter.  *Id.* #6.  However, Miller did not follow the car (the black KIA) and could not have seen who was driving it.  Defendant's Exhibit C.

An unidentified white male TPD officer is shown following directly behind the KIA.  *Id.* He pulls off to the right of the KIA as it is stopping.  *Id.*  Miller's car stops behind the first officer on the scene.  *Id.*  Four officers are shown at the scene: Miller, who is an African-American, and three unidentified white male officers.  *Id.* at 1:54.

Miller does not reveal at any point in his PCA, TPD Incident Report, or his sworn responses to interrogatories that he was working in concert with 3 other officers.  Defendant's Exhibit A, Plaintiff's Exhibit A, Plaintiff's Exhibit D, passim.  Miller failed to produce a single incident report or any other document written by the 3 other TPD officers at the scene in response to Plaintiff's first request for Production of Documents.  Plaintiff's Exhibit E, #11.  The documents produced are the TPD Incident Report (Bates #226-229) and TPD Property and

Evidence Receipt (Bates #230), both written by Miller.  Plaintiff's Exhibits A and C.  No written report or field test results of the alleged cocaine were produced by Miller, nor any lab analysis confirming the putative results.  The alleged field test is not captured on the video.

Miller has sworn that his initial encounter with Brooks was a "consensual encounter." Plaintiff's Exhibit D, #'s 2-4 and 6-11.  Miller is fully aware of what constitutes a consensual encounter: "…one in which an officer approaches an individual with no reasonable suspicion or probable cause that a crime is being committed, during which time a civilian may terminate the interaction with an officer." *Id.* at #11.  Miller stated that "he did not have a basis for a criminal stop at that moment, which makes this a consensual encounter." *Id.*  He then "developed probable cause for Plaintiff's arrest for driving without a license." *Id.*

The consensual nature of Miller's encounter with Brooks is a genuine issue of material fact in dispute.  Brooks has properly alleged that when he sought to terminate the encounter, Miller "grabbed [him] and slammed him into the patrol vehicle." ECF No. 1, p. 5 #5.  Miller has presented no evidence to refute that claim.

Given the numerous conflicts between Miller's account of events and the facts taken from the MAVRIC video, *supra,* the pretextual nature of Miller's account can be reasonably inferred from the evidence.

"In sum, there can be no question that the stop here was pretextual since police had neither reasonable suspicion of criminal activity nor a valid basis for a traffic stop.  Because the stop was illegal, the seizure was invalid and the cocaine should have been suppressed." *Doctor,* at 446.  As established above, both Miller's "consensual encounter" and decision to handcuff Brooks for a non-criminal traffic violation are pretextual; thus he had no probable cause to search Brooks.

Additional evidence supporting the pretextuality of Miller's account can be found in his Probable Cause Affidavit, TPD Incident Report, and the Florida Uniform Traffic Citation (henceforth "FUTC"). <u>Defendant's Exhibit A, Plaintiff's Exhibits A and B.</u> As in *Kingsland,* Plaintiff contends that Miller made several deliberately false statements to support his arrest, in violation of Florida Statute § 839.13(2). <u>ECF No. 1, p. 7, #21; p. 11, (D)(1).</u> Miller's PCA was used to support Plaintiff's arrest; this Court has adopted it as factual. *See* <u>ECF No. 22, p. 3, lines 13-16.</u> Both parties in the instant case agree that Brooks has never been issued a valid Florida driver's license, yet Miller entered DL# B620211732820 in the PCA. <u>Defendant's Exhibit A, p. 2.</u> This is no mere harmless error. During discovery, Miller was asked why he did not prepare a FUTC ("a ticket"). <u>Plaintiff's Exhibit D, #5.</u> He stated that "… for this criminal traffic infraction … an additional civil ticket was not required." <u>*Id.*</u> Brooks has proven that driving without a valid license is a non-criminal traffic <u>infraction,</u> *supra*; however, even if it <u>was</u> a criminal offense, Miller ignored Rule 6.165(a), <u>Florida Traffic Court Rules:</u> "All prosecutions for criminal traffic offenses by law enforcement officers shall be by uniform traffic citation as provided by § 316.50 Florida Statutes, …or by affidavit… as provided for in the Florida Rules of Criminal Procedure. If prosecution is by affidavit… a uniform traffic citation shall be prepared by the arresting officer…" <u>Florida Traffic Court Rules (2016).</u>

Miller's disingenuous sworn response to interrogatory #5, aside from being untrue, implies that no FUTC was written. <u>Plaintiff's Exhibit D #5.</u> However, through discovery Brooks obtained a copy of FUTC A3QI81E, Bates #055. <u>Plaintiff's Exhibit B.</u> The FUTC contains several falsified entries which were the subject of timely-filed discovery requests ignored by Miller's counsel, and which support Brooks' allegation that Miller's story is pretextual; see <u>Plaintiff's Exhibits B and H.</u>

1. The name entered on the FUTC is Eric C. Brooks; Plaintiff's legal name is Eric K. Brooks; he has never used Eric C. Brooks as an alias. *Id.*

2. The FUTC alleges that "Eric C. Brooks" lived at Plaintiff's legal address, 3216 Jim Lee Rd. Apt. 1, Tallahassee, FL 32305; Plaintiff avers that this is not true. *Id.*

3. The FUTC contains Plaintiff's date of birth, August 2, 1973. *Id.*

4. The FUTC states that Eric C. Brooks has a Class E license that expires in 2018; Plaintiff freely admits he has never had a Florida driver's license. *Id.*

5. The box for "Criminal Violation – Court Appearance Required" is marked; Plaintiff has shown per F.S. § 318 that driving without a valid driver's license is a non-criminal traffic infraction.

6. Eric C. Brooks' height on the FUTC is 5'4"; Plaintiff's height is 5'6". *Id.*

7. Miller marked the box certifying he delivered the FUTC to Brooks; Brooks never saw the FUTC until it was provided to him in discovery in the instant case. *Id.*

In toto, the FUTC contains seven separate false entries. *Id.* Plaintiff argues that seven falsified entries on a State document cannot be dismissed as mere "scrivener's errors." Miller's final false entry, certifying that he delivered the FUTC to Brooks when he did not do so, and failing to properly process the citation so a traffic hearing could be scheduled, violates TPD Rules of Conduct and Florida law:

> "3. Members shall not attempt to have any traffic citation or notice to appear reduced, voided, or stricken from the court calendar without due cause." Plaintiff's Exhibit F, V.3 (Bates #035). *See also* Plaintiff's Exhibit G, I.A.

and

> Improper Disposition of a Traffic Ticket: "any person who solicits or aids in the disposition of a traffic complaint or summons in any manner other than that authorized by the court or who willfully violates any provision of these rules shall

be proceeded against for criminal contempt." <u>Rule 6.080 Florida Traffic Court Rules (2016)</u>.

Miller has never made any showing that he had due cause to violate TPD Rules of Conduct; nor has he claimed authorization by the court to falsely certify to the delivery of FUTC A3QI81E or to impede the scheduling of a traffic court hearing to afford Brooks the lawful disposition of the non-criminal traffic infraction that Brooks was entitled to by Florida Statutes.

The material relevance of these falsified state documents is threefold: first, they attest to Miller's lack of credibility; second, they support Brooks' false arrest claim (Miller "plotted a reason to hold [Brooks] on scene," <u>ECF No. 1, p. 7, #21)</u>; and third, they demonstrate Miller's reckless disregard of clearly established statutory law during the course of the arrest.

Plaintiff has proven that the Probable Cause Affidavit and FUTC are falsified state documents, as he alleged in the Complaint (<u>Id.</u> at p. 11(D)(1)) and as defined in Florida Statutes § 839.13(2). These falsified documents support the basis of Miller's false arrest of Brooks; a reasonable person could infer that Miller's intent was to fabricate a veneer of legitimacy for his unlawful actions.

> The plaintiff in *Kingsland* "contends that the defendants made several deliberately false statements to support her arrest, in violation of the law. She cites *Holmes v. Kucynda*, 321 F. 3d 1069 (11th Cir. 2003), in which we held that qualified immunity "does not offer protection if an officer knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." *Id.* at 1077… In *Holmes*, we reversed the grant of qualified immunity and summary judgment to police officers where there existed factual questions regarding whether the officers filed a recklessly false application for an arrest warrant. *Id.* at 1083-84. Based on the facts of the case, the panel found that the district court could not conclusively determine that the officer's affidavit was not made in "reckless disregard of the truth." *Id.* at 1084. Likewise, there are questions of fact in this case regarding the integrity of the evidence which is to form the basis of an arguable probable cause determination.
> Viewed in the light most favorable to Kingsland, the facts support a conclusion that the arrest affidavit included recklessly or deliberately false

14

statements that are material to a finding of probable cause or arguable probable cause, as alleged, reasonable officers in the same circumstances and possessing the same knowledge as the defendants could not have believed that probable cause existed to arrest the plaintiff. Because a jury question exists as to whether the defendants constructed evidence upon which to base Kingsland's arrest, the question whether probable cause existed is aptly suited for a jury." *Kingsland,* at 382 F. 3d 1233.

As in *Kingsland,* Brooks contends that Defendant Miller made deliberately false statements in the Probable Cause affidavit. The Probable Cause Affidavit provided the basis for Brooks' arrest. That arrest resulted in a 346-day incarceration. At best, the question whether probable cause existed is properly suited to a jury trial; as shown, Miller knowingly violated Brooks' statutory and constitutional rights.

Miller's assertion that his "lawful search" of Brooks gave him probable cause to arrest him for that violation runs contrary to the Supreme Courts holding in State v. Perkins, 760 So. 2d 85 (Fla. 2000). ECF No. 17, p. 8, lines 19-21. In *Perkins,* the State conceded that the officer did not see Perkins commit any traffic violations, or any other activity justifying a stop. *Id.* Accordingly, the trial court held the stop unlawful. *Id.* at 86.

> "In *Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), the Court established the test to be applied when determining whether a Fourth Amendment violation requires the suppression of seized evidence: We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by means sufficiently purged of the primary taint." *Id.* at 487-88, 83 S. Ct. 407 (quoting John MacArthur Maguire, *Evidence of Guilt,* 221 (1959))." *Perkins,* at 88.
>
> "It is clear in the instant case the evidence required to prosecute the charge of driving with a suspended license came directly from the exploitation of the unlawful stop. We agree with the Fourth District and find "no basis for distinguishing the circumstances from others in which evidence must be suppressed, as fruit of the poisonous tree, where discovered following an unlawful stop." *Perkins,* 730 So. 2d at 482; e.g., *Delaware v. Prouse,* 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1990)(affirming suppression of marijuana found in

15

plain view as the fruit of an unlawful stop where the driver was randomly stopped solely to check his driver's license and registration and the State offered no empirical data to support its claim that the stop was justified by a broad concern for highway safety.)" *Perkins,* at 88.

As in *Perkins,* Miller admitted that he did not see any evidence of criminal activity, nor did he have probable cause to arrest Brooks. <u>Plaintiff's Exhibit D, #11.</u>  Like *Perkins,* Brooks' encounter with Miller involved exploitation of the unlawful arrest for driving without a valid license.  The alleged cocaine Miller has sworn that he found can only be "fruit of the poisonous tree," as the Supreme Court held in *Wong Sun,* and should be removed from any consideration of the merits of this case.

Miller can be seen going into Brooks' pockets on the MAVRIC video.  <u>Defendant's Exhibit C at 4:34-5:39.</u>  This unlawful search exceeds the permissible boundaries established in *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889, 1968 U.S. LEXIS 1345 (1968), as analyzed in *Minnesota v. Dickerson,* 508 U.S. 366, 379, 124 L. Ed. 334, 113 S. Ct. 2130 (1993): "Rather, the officer determined the item was contraband only after conducting a further search, one not authorized by *Terry* or any other exception to the warrant requirement.  Because this further search of respondent's <u>pocket</u> was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional." (emphasis added).  Miller has never alleged that he feared for his safety or that Brooks was armed; therefore, any search exceeding a *Terry* patdown is a Fourth Amendment violation.  In no way can this search be described as "lawful" under the *Terry* doctrine.

Based on the record evidence before this Court, Defendant Miller cannot be granted summary judgment or qualified immunity from Brooks' false arrest claim, Count I.

### 3. Defendant Miller Used Excessive Force Against Brooks Which Cannot be Dismissed as *de minimis*

Miller's use of force is a material fact in dispute, yet Miller states, "Plaintiff's claim that Officer Miller "slammed Plaintiff against his patrol vehicle" is demonstrably false per the undisputed video evidence and need not be considered in this analysis." ECF No. 17, p. 9, lines 20-21, p. 10, line 1. This disingenuous statement ignores the fact that Miller's initial contact with Brooks occurs off-camera; thus, nothing is "clearly shown," as Miller asserts elsewhere. *Id.* at p. 4, lines 4-6; Defendant's Exhibit C, 00:01 through 4:24. However, the audio track clearly captures the impact of Brooks' body being slammed into a solid object hard enough to make an audible noise on tape. Defendant's Exhibit C at approx. 2:14. Nothing in the video or audio proves or even suggests that Brooks' allegations of excessive force are "demonstrably false," as Miller asserts. ECF No. 17, p. 4, line 17, p. 9, line 21; Defendant's Exhibit C, passim. Defendant's statements about his malicious and sadistic overtightening of Brooks handcuffs are equally disingenuous. ECF No. 17, p. 4, lines 8-13. The second excessive force violation occurs when Miller places handcuffs on Brooks for the second time after publicly strip searching him. Defendant's Exhibit C at 8:59. This cannot be seen because the video goes black at 8:40; however, at that point Brooks has been led off-camera and only Miller's audible commands to undress in the street can be heard. *Id.* Whenever Brooks attempts to complain of the pain caused by his handcuffs, the audio captures music playing loudly inside the squad car, an anomaly from which a reasonable person could infer that Miller was drowning out Brooks' pleas for help. *Id.* at 41:41. Given the facts contained in Brooks' Complaint, he has properly pleaded two separate violations of Miller's violation of his Fourth Amendment right to be free of excessive force.

17

The *Graham* "reasonableness" standard proves helpful in assessing the totality of the circumstances. The decision to slam Brooks into a squad car prior to handcuffing him cannot be "reasonably proportionate" for the non-criminal infraction of driving without a license. *See Lee*, 284 F. 3d at 1198 ("*Graham* dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight.") Miller has not alleged that Brooks posed any danger to him; his decision to remove Brooks' handcuffs before making him remove his clothing in public indicates that Miller had no concerns that Brooks would flee, negating any notion that Brooks was at risk of flight.

It is established that any force employed in a false arrest is excessive; *see Thornton v. City of Macon*, 132 F.3d 1395 (11th Cir. 1998). Miller's bare assertions to the contrary and his attempts to minimize Brooks' pain and injuries cannot overcome Brooks' version of the facts for purposes of summary judgment. "At summary judgment, we cannot simply accept the officer's subjective version of events, but rather must reconstruct the event in the light most favorable to the non-moving party and determine whether the officer's use of force was excessive under those circumstances." *Fils v. City of Aventura*, 647 F. 3d 1272, 1288 (11th Cir. 2011)(cited in *McKnight v. Garriott*, 2018 LEXIS 195489 (2018)).

In *Lee*, the 11th Circuit distinguished the plaintiff's excessive force claims from *Rodriguez, Gold, Jones, Nolin, and Post* (all but *Jones* cited in Defendant's argument to treat Brooks' injuries as *de minimis*) because Lee's <u>criminal</u> offense was "undeniably less significant than those for which the plaintiffs in the other cases were arrested. *Lee*, 284 F. 3d 1199. ("Moreover, the facts alleged by Lee take this case outside the realm of cases in which we have granted qualified immunity on the ground that the force used and injury sustained were *de*

18

*minimis.* First, the crime at issue in this case was undeniably less significant than the crimes in any of the other cases we have considered.") *Id.* Because Brooks' injuries resulted from Miller slamming him into a car prior to arresting him for a <u>non-criminal</u> offense, the 11th Circuit's reasoning in *Lee* must defeat Miller's defense. Brooks' injuries are a material fact in dispute until Brooks is allowed to complete his discovery requests for the relevant medical records from the Leon County Detention Center reflecting a doctor's diagnosis and the palliative care Brooks received.

Defendant Miller cannot claim qualified immunity for Brooks' claim of excessive force because he has not refuted the facts Brooks pleaded in his Complaint; thus, summary judgment should not be granted for Claim II, Excessive Force.

<u>4. Defendant Miller Is Not Entitled to Qualified Immunity for Denying Plaintiff's Pleas for Medical Attention</u>

Brooks alleged in his Complaint that Miller "sadistically and maliciously" overtightened his handcuffs and that the lengthy delay resulted in numbness and pain in his wrists and arms. Further, he avers that the impact from being slammed into a squad car by Miller inflamed and aggravated an earlier shoulder injury. <u>Declaration #8.</u> Finally, the effects of both the impact and the handcuffing caused persistent pain in his wrists, shoulders, and arms along with numbness in his hands for up to two months after his arrest. <u>Declaration #9.</u> He took OTC pain medications while housed at Leon County Detention Center. <u>Declaration #10.</u> He went to sick call at the jail when those medications were not effective. <u>Declaration #11.</u>

Miller asserts that "the Eighth Amendment has no application to [Brooks'] claim." <u>ECF No. 17, p. 11, lines 14-15.</u> However, in practical effect, Plaintiff's claims regarding the denial of medical care are subjected to the same minimum standard of care as that allowed by the Eight

Amendment. *Cook ex rel. Tessier v. Sheriff of Monroe County, Fla.,* 402 F. 3d 1092, 1115 (11th Cir. 2005)(cited in *McKnight v. Garriott,* 2018 U.S. LEXIS 20). Therefore, this Court must give these Fourteenth Amendment claims the same scrutiny as if Plaintiff had brought these Fourteenth Amendment claims under the Eight Amendment. *Melton v. Abston,* 841 F. 3d 1207, 1220 (11th Cir. 2016)(addressing allegations of deliberate indifference to the serious medical needs of a pretrial detainee)(cited in *McKnight,* at 20).

Plaintiff must meet the three prongs set out in *Goebert*: objective, subjective, and causation. *McKnight, supra.* Brooks has alleged that Miller's actions in slamming him and handcuffing him aggravated an old shoulder injury, leading to persistent pain over a period of two months, and that Miller ignored Brooks' pleas for medical attention, going as far as to turn up the radio in his squad car to obscure his words. Brooks avers that the extent of his injuries is a material fact in dispute which cannot be resolved at the summary judgment stage, particularly given the premature closing of discovery, and that the facts pleaded above are sufficient to meet the *Goebert* standard for deliberate indifference to Brooks' medical needs.

Accordingly, Miller's request for summary judgment for Claim III, Denial of Medical Care, should not be granted.

5. Miller's Defense of Qualified Immunity Must fail Because He Violated Clearly Established Statutory Laws and Constitutional Rights

Plaintiff Brooks respectfully submits that the foregoing Argument has demonstrated that Miller broke numerous Florida laws and clearly established constitutional rights during his false arrest of Brooks and the ensuing illegal search and seizure; that Miller battered Brooks prior to the arrest; that he deliberately overtightened Brooks' handcuffs to inflict unnecessary pain on Brooks, and that he falsified three State documents, i.e. the Probable Cause Affidavit, TPD

Incident Report, and Florida Uniform Traffic Citation, to create a pretext for his actions. Therefore, qualified immunity is not available to Defendant Miller.

*    *    *

Before concluding this <u>Opposition,</u> Plaintiff asks the Court to take notice of the clear evidence of tampering contained in <u>Defendant's Exhibit C.</u> The opening frames show the back of the black KIA directly. The camera then switches to a view of the unidentified white officer's squad car as he stops, gets out, turns to look back at Miller's camera, then gets back in. The opening footage cannot be Miller's dashcam; MAVRIC #100711.

More troubling are the series of blacked out passages at 8:40, and 37:30, the odd jump at 18:00, and the blackouts at 23:50 and 24:46, with the sound of a white officer cursing as he does something apparently connected with these breaks in continuity. Fortunately for the Plaintiff, what segments Defendant's counsel provided appear to support Brooks' version of events, but the purpose of creating an accurate record of police/civilian interactions is negated by such shoddy recordings, if that is the result for which dash cameras are installed.

## D. CONCLUSION

Defendant Miller has failed to meet the burden of properly supporting his Motion for Summary Judgment. Notably, two of his three exhibits contain proven falsehoods or show the Defendant engaging in behavior which is clearly at odds with what a reasonable officer would do under the same circumstances. Miller's statement that it is "of no consequence that these charges were later dropped" (<u>ECF No. 17, p. 9</u>) shows a cavalier disdain for Plaintiff's civil rights and the Florida laws Miller swore to uphold, to say nothing of Plaintiff's eleven month stay in jail without lawful justification. Qualified immunity does not cover willful malfeasance.

21

What evidence this Court has allowed Plaintiff to obtain through discovery supports his version of facts, not Miller's pretextual story.  Finally, as noted above, Miller has failed to move for summary judgment on the Fourth Amendment claim of illegal search and seizure which is amply alleged in the gravamen of Brooks' Complaint.

WHEREFORE, all premises considered, Plaintiff moves this Court to deny Miller's assertions of qualified immunity, deny his Motion for Summary Judgment for each claim, reopen the discovery that was stayed to hear Defendant's Motion, and allow this action to proceed to trial on the material facts in dispute.

Respectfully submitted,

*Eric K. Brooks*

ERIC K. BROOKS, Plaintiff #582151
Tomoka Correctional Institution
3950 Tiger Bay Road
Daytona Beach, Florida 32124

## CERTIFICATE OF COMPLAINCE WITH LOCAL RULE 7.1 N.D. Fla.

I CERTIFY that the foregoing Opposition and Memorandum of Law contains 6,827 words.

*Eric K. Brooks*

ERIC K. BROOKS, Plaintiff #582151

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have provided a copy of this Opposition to Summary Judgment to this Court and to Defendant's counsel, Hannah Monroe, 300 S. Adams St., Box A-5, Tallahassee, FL 32301, by furnishing it to prison mail officials for prepaid first class U.S. mail on this 7th day of August, 2020.

ERIC K. BROOKS, Plaintiff #582151
Tomoka Correctional Institution
3950 Tiger Bay Road
Daytona Beach, Florida 32124

23

## PLAINTIFF'S EXHIBITS

A. Tallahassee Police Department Incident Report, Bates #226-229

B. Florida Uniform Traffic Citation A3QI81E, Bates #055

C. Tallahassee Police Department Property and Evidence Receipt, Bates #230

D. Defendant's Answers to Interrogatories

E. Defendant's Response to Plaintiff's First Request for Production of Documents

F. Tallahassee Police Department Rules of Conduct, Bates #027, 035.

G. Tallahassee Police Department Rules of Conduct, Bates # 002, 007.

H. Declaration in Support of Plaintiff's Opposition to Summary Judgment

## Declaration In Support of Plaintiff's Opposition to Summary Judgment

I, Eric K. Brooks, hereby make the following declaration under penalty of perjury:

1. I am the plaintiff in *Brooks v. Miller*, case # 4:19-cv-0524-MW/MAF.

2. My legal name is Eric K. Brooks; I have never been known by Eric C. Brooks or used that name as an alias.

3. No person named Eric C. Brooks lived with me at 3216 Jim Lee Road, Apt. # 1, Tallahassee, FL 32305 at the time of my arrest on November 12, 2016.

4. My date of birth is August 2, 1973.

5. I have never been issued a Florida driver's license.

6. My height is 5'6".

7. I was never delivered a copy of FUTC A3QI81E and did not become aware of it until it was produced in discovery.

8. I suffered additional pain and inflammation of a pre-existing shoulder injury following my arrest after Defendant Miller slammed me into a car.

9. The pain persisted for almost 2 months after my arrest, including episodes of numbness in my hands, wrist pain, and elbow pain.

10. I regularly took OTC pain medication in the Leon County Detention Center.

11. When that proved ineffective, I went to sick call and sought medical treatment.

I swear the foregoing is true and correct.

*Respectfully Submitted*
*Eric K. Brooks*

Exhibit H

# Tallahassee Police Department

### Incident Report

Report: 11/12/2016 16:21
Case Number: 00-16-037025

## Incident

| Case Number: 00-16-037025 | Date Of Report: 11/12/2016 16:21 | Occured On From: 11/12/2016 15:16 | Occured To: 11/12/2016 15:16 | Report Type: Original - Arrest Affidavit |
|---|---|---|---|---|
| Incident Type: Criminal Offense | | Department Case Status: Closed - Cleared By Arrest | Case Status Date: | Cleared: |
| Business Name: 2516 Golf Terrace Tallahassee Florida | | | | |

Day of Ocurrence: Saturday
Dispatched: 11/12/2016 15:16
Received: 11/12/2016 15:16
Arrived: 11/12/2016 15:16
Reported Via 911 Yes No: No
Was Evidence Collected: Yes
Evidence Collected From: Person(s)
Photos Videos Taken: Yes - In Car Camera

Digital Cam and Vehicle Video Number: 100711
Photos Video Taken by: Ofc D Miller
Specific Location Type: Street/Road/Highway/Interstate
Hate Crime UCR: No
Confidentiality Req: No
Juvenile Involved: No
District Zone: Charlie-4A

## Offense 1 - Original Offense

| Florida Statute: 322.03(1) Operate Motor Vehicle WO Valid License | Local Ordinance: | Lighting Conditions: Daylight | Disposition Date: 11/12/2016 |
|---|---|---|---|

### Offense Information

Attempted/Committed: Committed
Premise Type: Residential
Number Of Premises: 01
Entry Type: Not Applicable
Suspect Characteristics: Drug Activity

Occupancy Code: Not Applicable
Offense Status: Cleared By Arrest - Adult
Exceptional Clearance: Arrested On Primary Offense
Number Of People Arrested: 01

### Roles

Person Name: Eric K Brooks
Type: Arrestee

Primary Role: Yes

## Offense 2 - Original Offense

| Florida Statute: 893.13(6A) Drugs/Narcotics- Possess Cocaine | Local Ordinance: | Lighting Conditions: Daylight | Disposition Date: 11/12/2016 |
|---|---|---|---|

| Reporting Officer: DAMON MILLER 375 97017 | Department: Tallahassee Police Department | Report Status: Approved |
|---|---|---|
| Supervising Officer: | | Date/Time: |
| Verifying Officer: W BUTLER 212 98291 | Department: Tallahassee Police Department | Date/Time: 11/12/2016 17:00 |

00-16-037025

**Response to Request for Production**

Exhibit A-1

# Tallahassee Police Department

**Report:** 11/12/2016 16:21
**Case Number:** 00-16-037025

### Incident Report

## Offense Information

**Attempted/Commited:** Committed
**Premise Type:** Residential
**Number Of Premises:** 01
**Entry Type:** Not Applicable
**Suspect Characteristics:** Drug Activity

**Occupancy Code:** Not Applicable
**Offense Status:** Cleared By Arrest - Adult
**Exceptional Clearance:** Arrested On Primary Offense
**Number Of People Arrested:** 01

### Roles

**Person Name:** Eric K Brooks
**Type:** Arrestee

**Primary Role:** Yes

## Person 1 - Eric K Brooks

| Person Type:<br>Arrestee | Home Phone: | Business Phone: | | Mobile Phone Pager: |
|---|---|---|---|---|
| Race:<br>Black | Sex:<br>Male | DL ID Number: | | DL Exp. Date: |
| SSN: | Birth Date:<br>08/02/1973 | Birth Place: | | |
| Person Address:<br>3216 Jim Lee Rd Tallahassee Florida (Leon County) | | | | |
| Employer Information: | | | | |

### Person Information

**Age:** 43

**SPN JIS Number:** 51-98-9

## Business 1 - State of Florida

| Business Type:<br>Victim | Business Phone: | Address: |
|---|---|---|

| Reporting Officer:<br>DAMON MILLER 375 97017 | Department:<br>Tallahassee Police Department | Report Status:<br>Approved |
|---|---|---|
| Supervising Officer: | | Date/Time: |
| Verifying Officer:<br>W BUTLER 212 98291 | Department:<br>Tallahassee Police Department | Date/Time:<br>11/12/2016 17:00 |

00-16-037025

**Response to Request for Production**

Page 2 of 4

COT-000227

Exhibit A-2

# Tallahassee Police Department

Report: 11/12/2016 16:21
Case Number: 00-16-037025

Incident Report

## Vehicle 1 - Florida Kia

| Model Free Form: | Vehicle Status | Vehicle Disposition:<br>Left On Scene | VIN:<br>KNDJN2A29G7368695 |
|---|---|---|---|
| Tag Number:<br>827QHG | Tag Expiration Date:<br>11/18/2017 | Vehicle Type:<br>Auto | Category:<br>Searched |
| Business Name: | | Recovery Location Buss Name: | |

### Vehicle Information

**Primary Top Color:** BLACK

**Vehicle Style:** Hatchback 2 door

**Insured:** No

**Keys In Vehicle:** Yes

**Vehicle Locked:** Unknown

**Release Authority:** Reporting Officer

## Property 1 - Drugs/Drug Paraphernalia

| Description:<br>Cocaine | Year | Make: | Model: |
|---|---|---|---|
| Category:<br>* Evidence - HOLD | Condition | Serial Number: | Color:<br>WHITE |
| Stolen Location: | | Recovery Location: | |

### Property Information

**UCR Type:** Evidence - Hold

**Insured:** Evidence/Seized

### Document/Drugs

**Drug Activity:** Other - Explain In Narrative

**Drug Type:** Cocaine

**Drug Quantity:** 1.000 Gram (s)

## Narrative 1 - Basic - Original Report

```
PROBABLE CAUSE TEMPLATE - ORIGINAL REPORT
==================================================

TIME OF ARREST (ARRESTEE IN PHYSICAL CUSTODY):
1518

DEFENDANT NAME: Eric Brooks

DOB: 8/2/73
```

| Reporting Officer:<br>DAMON MILLER 375 97017 | Department:<br>Tallahassee Police Department | Report Status:<br>Approved |
|---|---|---|
| Supervising Officer: | | Date/Time: |
| Verifying Officer:<br>W BUTLER 212 98291 | Department:<br>Tallahassee Police Department | Date/Time:<br>11/12/2016 17:00 |

00-16-037025

Page 3 of 4

Exhibit A-3

## Tallahassee Police Department

Report: 11/12/2016 16:21

Case Number: 00-16-037025

### Incident Report

FACTS TO SUPPORT ABOVE CHARGE(S):

While on uniformed patrol I observed Brooks driving a black KIA bearing FL tag, 827QHG and park in front of 2516 Golf Terrance. Brooks exited the vehicle and began walking towards other pedestrians that were gathered in the area.

I also drove to the area and exited my vehicle, and had a consensual contact with Brooks. When asked for his FL DL, Brooks stated that he did not have a valid license. Based upon this omission and observing him drive to the area, I placed Brooks under arrest for No Valid DL. While searching his left front jacket pocket, I found a rectangular piece of crack cocaine. Brooks immediately stated that he was unaware that it was in his pocket.

Post Miranda, that I read from a preprinted issued card, Brooks waived his rights and agreed to speak. Brooks admitted that he received the cocaine from an unknown black male wearing a camo jacket that was previously in the area, and had never been issued a FL DL, which was confirmed via DAVID.

Brooks was additionally charged with Possession of Cocaine and transported to LCJ without incident.

Ofc Wirght tested the suspected crack cocaine which tested presumptive positive. This affiant impounded the cocaine at TPD headquarters.

This interaction was captured vis MAVRIC #100711.

PLACE AN "X" IN FRONT OF ALL THAT APPLY:

Supplemental Reports Submitted
Victim Statement Submitted
Witness Statement(s) Submitted
Suspect/Arrestee Statement Impounded
X Property Impounded
Vehicle Towed

| Reporting Officer:<br>DAMON MILLER 375 97017 | Department:<br>Tallahassee Police Department | Report Status:<br>Approved | |
|---|---|---|---|
| Supervising Officer: | | Date/Time: | |
| Verifying Officer:<br>W BUTLER 212 98291 | Department:<br>Tallahassee Police Department | Date/Time:<br>11/12/2016 17:00 | |

00-16-037025

Page 4 of 4

**Response to Request for Production**

COT-000229

Exhibit A-4

16-37025

16-37025

FLORIDA UNIFORM TRAFFIC CITATION   A3QI81E

| County Of | ☐ (1) F.H.P. ☒ (2) P.D ☐ (3) S.O. ☐ (4) Other. |
| LEON | Agency |
| City (If Applicable) | Name TALLAHASSEE POLICE DEPT |
| TALLAHASSEE | Agency # 2 |

In the court designated below the undersigned certifies that he/she has just and reasonable grounds to believe and does believe that on:

SUMMONS
(DEFENDANT COPY)

| Day of Week | Month/Day/Year | Time |
| SATURDAY | 11/12/2016 | 03:50 PM |

| Name First | Middle | Last |
| ERIC | C | BROOKS |

| Street | IF DIFFERENT THAN ONE ON DRIVER LICENSE "X" HERE ❯❯ |
| 3216 JIM LEE RD APT 1 | |

| City | State | Zip |
| TALLAHASSEE | FL. | 32305 |

| Telephone | DOB 08/02/1973 | Race B | Sex M | Hgt 504 |

| Driver License Number | State FL | Class E | CDL License ☐ Yes ☒ No | Yr. License Exp. 2018 | Comm. Mtr.Veh. ☐ Yes ☒ No |
| Yr. Veh 2016 | Make KIA | Style UT | | Color BLK | |
| Veh. License # 827QHG | Trailer Tag # | State FL | Year Tag Expires 2017 | |

| Placarded Hazardous Material ☐ Yes ☒ No | >=16 Pass. ☐ Yes ☒ No | Motorcycle ☐ Yes ☒ No | Companion Citation Nos ☐ Yes ☒ No |

Upon a Public Street or Highway or Other Location Namely
2616 GOLF TERRANCE

Ft. _____ Miles _____ ☐ ☒ ☐ ☐   Of Node _____

DID UNLAWFULLY COMMIT THE FOLLOWING OFFENSE, CHECK ONLY ONE OFFENSE EACH STATE.

☐ UNLAWFUL SPEED _____ MPH SPEED APPLICABLE _____ MPH
( ☐ INTERSTATE ☐ SCHOOL ZONE ☐ CONSTRUCTION WORKERS PRESENT )

SPEED MEASUREMENT DEVICE

| ☐ CARELESS DRIVING | ☐ CHILD RESTRAINT | ☐ EXPIRED DRIVER LICENSE SIX (6) MONTHS OR LESS |
| ☐ VIOLATION OF TRAFFIC CONTROL DEVICE | ☐ SAFETY BELT VIOLATION | ☐ EXPIRED DRIVER LICENSE MORE THAN SIX (6) MONTHS |
| ☐ FAILURE TO STOP AT A TRAFFIC SIGNAL | ☐ IMPROPER OR UNSAFE EQUIPMENT | ☒ NO VALID DRIVER LICENSE |
| ☐ IMPROPER CHANGE OF LANE OR COURSE | ☐ EXPIRED TAG SIX (6) MONTHS OR LESS | ☐ DRIVING WHILE LICENSE SUSPENDED OR REVOKED |
| ☐ NO PROOF OF INSURANCE | ☐ EXPIRED TAG MORE THAN SIX (6) MONTHS | ☐ DRIVING UNDER THE INFLUENCE |
| ☐ VIOLATION OF RIGHT-OF-WAY | ☐ IMPROPER PASSING | ☐ PASSENGER UNDER 18 YRS. |

BAL

DL NO DL-NEVER HAD ONE ISSUED

Re-Exam
☐ Yes ☒ No
DL Seized
☐ Yes ☒ No

| ☐ Aggressive Driving | In Violation Of State Statute | Section 322.03(1) | Sub-Section |
| Crash ☐ Yes ☒ No | Property Damage ☒ No ☐ Yes $ | Injury to Another ☐ Yes ☒ No | Serious Bodily Injury to Another ☐ Yes ☒ No | Fatal ☐ Yes ☒ No |

☒ CRIMINAL VIOLATION   COURT APPEARANCE REQUIRED AS INDICATED BELOW
☐ INFRACTION COURT APPEARANCE REQUIRED AS INDICATED BELOW
☐ INFRACTION WHICH DOES NOT REQUIRE APPEARANCE IN COURT

A3QI81E

Civil Penalty is $ 0.00

| Court Information | 1:30 PM |
| | DATE | TIME |

COURT

LOCATION

Arrest Delivered To   LCJ   Date 11/12/2016

I AGREE AND PROMISE TO COMPLY AND ANSWER TO THE CHARGES AND INSTRUCTIONS SPECIFIED IN THIS CITATION. WILLFUL REFUSAL TO ACCEPT AND SIGN THE CITATION MAY RESULT IN ARREST. I UNDERSTAND MY SIGNATURE IS NOT AN ADMISSION OF GUILT OR WAIVER OF RIGHTS. IF YOU NEED REASONABLE FACILITY ACCOMMODATIONS TO COMPLY WITH THIS CITATION, CONTACT THE CLERK OF THE COURT.

x SIGNATURE OF VIOLATOR (SIGNATURE REQUIRED IF INFRACTION REQUIRES APPEARANCE IN COURT)

| D. MILLER JR. | 375 | 375 | PATROL |
| Rank - Name of Officer | Badge No. | ID No. | Troop/Unit |

☒ I CERTIFY THIS CITATION WAS DELIVERED TO THE PERSON CITED ABOVE

**Response to Request for Production**

COT-000055

Exhibit B

# Tallahassee Police Department
## Property & Evidence Receipt

1. Case Number **37025**

| 0 | 0 | - | 1 | 6 | - | 0 | 3 | 7 | 0 | 2 | 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|

**INCIDENT**

| 2. Type of Crime or Incident | 3. Date, Day, and Time Impounded | 4. WinACE Number |
|---|---|---|
| 70/31 | 11/12/16 Sat | |

5. Address where items were taken (Give exact location of recovered items)
2816 Golf Terrace

6. Person Type Codes: V = Victim O = Owner R = Reporting Person P = Discovering Person S = Suspect A = Arrested Person (Note all that apply)

**PERSON**

| 6. Code | 7. Name (Last, First Middle) | 8. Race | 9. Sex | 10. D.O.B. | 11. Address (Include City, and ZIP Code) | 12. Home Phone | 13. Work Phone |
|---|---|---|---|---|---|---|---|
| A | Brooks, Eric | B | M | 8/12/13 | 3216 Jim Lee Rd A114 | | |

**NARRATIVE**

| 14. Item Number | 15. Quantity (Weight/Count) | 16. Narrative/Description: (Found property – include circumstances of receipt) (Generic name, style/shape, specific type, material, trade or manufacture name, model, size, color, condition, identifying marks, etc.) | 17. P&E Location |
|---|---|---|---|
| 1 | 1g | Cocaine | |

| 18. NCIC Check ☐ Yes ☑ No | 19. Hold Requested/ Requesting Person/Purpose: ☐ Yes ☐ No  Evidence | 20. Processing Required: ☐ Yes ☑ No | 21. Owner Notified by/Date: |
|---|---|---|---|

**CHAIN OF CUSTODY**

| 22. Signature of person received from (if present): | 23. Supervisor's Approval Signature: | 26. Processed by/Date |
|---|---|---|

| 24. Signature of Seizing Officer and ID Number:  #375 | 25. Verifying Signature (required for cash) | |
|---|---|---|
| | Received by: | Received: In person: ☐ After-hours Storage: ☐ Other: |
| Item numbers/Purpose | Date/Time | |

| 27. Released from: | Received by: | Received: In person: ☐ After-hours Storage: ☐ Other: |
|---|---|---|
| Item numbers/Purpose | Date/Time | |

| 28. Released from: | Received by: | Received: In person: ☐ After-hours Storage: ☐ Other: |
|---|---|---|
| Item numbers/Purpose | Date/Time | |

PD139 (Revised May 2016)         ORIGINAL - RECORDS MANAGEMENT

**Response to Request for Production**

COT-000230

Exhibit C

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISON

ERIC K. BROOKS,

        Plaintiff,

                                CASE NO.: 4:19cv524-MW-CAS

vs.

OFFICER DAMON MILLER,

        Defendant.

_____/

### DEFENDANT'S ANSWERS TO INTERROGATORIES

<u>Interrogatory No. 1</u>    Why were you on 2509 Golf Terrace on November 12, 2016 at approximately 3:18 p.m.?

Response: Officer Miller was on uniformed patrol in the area of 2516 Golf Terrace at the date and time in question.

<u>Interrogatory No. 2</u>    Where did you observe Plaintiff Eric Brooks at the time you developed probable cause to stop him on November 12, 2016 at approximately 3:18 p.m.?

Response: Officer Miller did not stop Plaintiff Eric Brooks while he was driving on the date and time in question. Instead, Officer Miller followed Mr. Brooks to the area of 2516 Golf Terrace where he had a consensual encounter with him. After Mr. Brooks admitted to driving without a valid license, Officer Miller had probable cause to arrest him for this criminal traffic infraction.

<u>Interrogatory No. 3</u>    Why did you stop Eric Brooks when he was walking down 2509 Golf Terrace on November 12, 2016 at approximately 3:18 p.m.?

Response: Officer Miller did not stop Mr. Brooks while he was walking nor was their encounter at 2509 Golf Terrace. Rather, Officer Miller observed Mr. Brooks driving a black KIA bearing FL tag 827QHG and observed Mr. Brooks park in front

Exhibit D-1

of 2516 Golf Terrace. Officer Miller observed Mr. Brooks exit the vehicle and begin walking towards pedestrians gathered in the area. Officer Miller also drove to this area and exited his vehicle. Officer Miller than had a consensual encounter with Mr. Brooks and asked him for his driver's license.

Interrogatory No. 4        Why did you ask Brooks who was driving the black Kia?

Response: Officer Miller asked Plaintiff this question as part of his consensual encounter with him, which Plaintiff participated in.

Interrogatory No. 5        Why did you not write Eric Brooks a ticket for driving the black Kia without a license?

Response: Plaintiff was arrested for this criminal traffic infraction and an additional civil ticket was not required.

Interrogatory No. 6        Why did you not initiate a traffic stop if you were if you thought Plaintiff Eric Brooks broke the law?

Response: Officer Miller was not aware Mr. Brooks had violated the law by driving without a valid license at the time Officer Miller observed Plaintiff driving. Only when Officer Miller learned that Plaintiff was driving without a valid license through his consensual encounter with him did he have reason to initiate an arrest.

Interrogatory No. 7        Why did you wait until Eric Brooks exited the black Kia before you made contact?

Response: Officer Miller was not conducting a traffic stop; he was having a consensual encounter with Plaintiff.

Interrogatory No. 8        Why did you follow the car if no crime had been committed?

Response: Officer Miller followed the car as part of proactive policing and to initiate a consensual encounter. Crimes were being committed by Plaintiff, as he was operating a vehicle with the knowledge that he had never possessed a driver's license and also had cocaine in his possession, although Officer Miller did not learn of these crimes until after his consensual encounter with Plaintiff and his search of Plaintiff subsequent to arrest.

Exhibit D-2

Interrogatory No. 9     Why did you ask Eric Brooks for his license if you never observed him committing and driving or traffic infractions?

Response:  Officer Miller asked Plaintiff for his license as part of their consensual encounter.

Interrogatory No. 10:  What is so consensual about the contact with you and Eric Brooks? When you forcefully grabbed him and slammed him against the patrol vehicle because he refused to answer any questions?

Response: Defendant objects to this Interrogatory as it assumes allegations shown to be false by the MAVRIC video in this case. Officer Miller never grabbed Plaintiff nor did he slam him against his patrol vehicle. The initial interaction between Plaintiff and Officer Miller was consensual, and Officer Miller placed Plaintiff into handcuffs only after probable cause for his arrest had been established.

Interrogatory No. 11:  Why did you describe your first contact with Eric Brooks as consensual?

Response: A consensual encounter is one in which an officer approaches an individual with no reasonable suspicion or probable cause that a crime is being committed, during which time a civilian may terminate the interaction with an officer. In this instance, Officer Miller approached Plaintiff and engaged him in conversation, although he did not have a basis for a criminal stop at that moment, which makes this a consensual encounter. However, during their consensual encounter, Officer Miller developed probable cause for Plaintiff's arrest for driving without a valid license.

Interrogatory No. 12:  How many criminal charges resulted from the Probable Cause Affidavit # 0016037025?

Response: Two; Plaintiff was charged with Operating a Motor Vehicle without a Valid Driver's License in violation of Florida Statute, 322.01(1), and Possession of Cocaine in violation of Florida Statute, 893.13(6)(A).

Interrogatory No. 13:   What was the disposition of the criminal charges?

Response:  On October 27, 2017, the State Attorney's Officer filed a Nolle Prosequi dismissing these charges against Plaintiff in exchange for his plea in 2016CF3454.

3

Exhibit D-3

<u>Interrogatory No. 14</u>:  Have you ever been investigated for falsifying any Probable Cause Affidavits or any other documents?

Response: No.

_(signature)_

Officer Damon Miller, Jr.

I HEREBY SWEAR AND AFFIRM THE ABOVE ANSWERS ARE TRUE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF, THAT MATERIALLY FALSE STATEMENTS KNOWINGLY MADE WITH THE INTENT TO DEFRAUD OR MISLEAD SHALL SUBJECT ME TO THE PENALTY FOR PERJURY AND MAY ALSO BE CONSIDERED A FRAUD UPON THE COURT.

Date: Apr. 15 , 2020

STATE OF Florida

COUNTY OF Leon

BEFORE ME, the undersigned authority, personally appeared Officer Damon Miller, Jr., who being first duly sworn, says that he has read the above and foregoing Answers to Interrogatories and the same are true and correct to the best of his knowledge and belief.

SWORN TO AND SUBSCRIBED before me this 15th day of April , 2020.

4

Exhibit D-4

*Brenda Rojas*
Signature of Notary

> BRENDA ROJAS
> MY COMMISSION # GG 246434
> EXPIRES: August 7, 2022
> Bonded Thru Notary Public Underwriters

PRINT, TYPE OR STAMP NAME OF
NOTARY

Personally known _____✓_____

OR Produced Identification _____

Type of Identification Produced _____

## CERTIFICATE OF SERVICE

I hereby certify that on April _17_, 2020, a copy of the foregoing was served

by regular mail to Plaintiff, Eric K. Brooks, Inmate No. 582151, Tomoka

Correctional Institution, 3950 Tiger Bay Road, Daytona Beach, Florida 32124.

s/ Hannah D. Monroe
Florida Bar Number 102762
Assistant City Attorney
City Attorney's Office
300 South Adams Street, Box A-5
Tallahassee, FL 32301
(850) 891-8554; Fax: (850) 891-8973
Hannah.Monroe@talgov.com
*Attorney for Defendant*
*Officer Damon Miller*

5

Exhibit D-5

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

ERIC K. BROOKS,

     Plaintiff,

vs.                                                    CASE NO.:  4:19cv524-MW/MAF

OFFICER DAMON MILLER,

     Defendant.

_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant, OFFICER DAMON MILLER, submits his response to the request

for production of documents served on Defendant via regular mail on March 26,

2020, by Plaintiff, "Eric K. Brooks:

## RESPONSES TO REQUESTS FOR PRODUCTION

1.    Tallahassee Police Department policy and procedures for an officer's

determination of probable cause.

**Response:** Documents responsive to this request, to the extent they exist and

are in the possession, custody, and control of Defendant or his employer, have been

produced. See Bates Stamped Documents Nos. 1 - 39.

2.    Any and all investigation results that came from this incident of arrest.

Exhibit E-1

**Response:** There are no documents responsive to this request in Defendant's possession, custody, or control. Per the document produced in response to Request for Production Number 5, Tallahassee Police Department Internal Affairs Department did not deem this incident required an investigation.

3.     All investigation reports from the Internal Affairs office of the arrest.

**Response:** There are no documents responsive to this request in Defendant's possession, custody, or control. Per the document produced in response to Request for Production Number 5, Tallahassee Police Department Internal Affairs Department did not deem this incident required an investigation.

4.     All grievances filed to the Internal Affairs.

**Response:** Documents responsive to this request, to the extent they exist and are in the possession, custody, and control of Defendant or his employer, have been produced. See Bates Stamped Documents Nos. 40 - 47.

5.     All responses and answers to the grievances that Plaintiff filed against Officer Damon Miller to the Internal Affairs.

**Response:** Documents responsive to this request, to the extent they exist and are in the possession, custody, and control of Defendant or his employer, have been produced. See Bates Stamped Document No. 48.

6.     The audio recording of the arrest MAVRIC # 100711.

2

Exhibit E-2

**Response:** Documents responsive to this request, to the extent they exist and are in the possession, custody, and control of Defendant or his employer, have been produced. See discs produced at Bates Nos. 49-50.

7.      The probable cause report for the arrest.

**Response:** Documents responsive to this request, to the extent they exist and are in the possession, custody, and control of Defendant or his employer, have been produced. See Bates Stamped Documents Nos. 51 - 55.

8.      Officer Damon Miller disciplinary record.

**Response:** Documents responsive to this request, to the extent they exist and are in the possession, custody, and control of Defendant or his employer, have been produced. See Bates Stamped Documents Nos. 56 - 70.

9.      Officer Damon Miller use of force record.

**Response:** Documents responsive to this request, to the extent they exist and are in the possession, custody, and control of Defendant or his employer, have been produced. See Bates Stamped Documents Nos. 71 - 225.

10.     Medical complaints and record from the Leon County Jail from this incident.

**Response:** There are no documents responsive to this request in Defendant's possession, custody, or control. Per the document produced in response to Request for Production Number 5, Tallahassee Police Department Internal Affairs Department did not deem this incident required an investigation.

3

Exhibit E-3

11.    Any other officer reports filed that were part of the above incident.

**Response:**  Documents responsive to this request, to the extent they exist and are in the possession, custody, and control of Defendant or his employer, have been produced. See Bates Stamped Documents Nos. 226 - 230.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 17, 2020, true and correct copy of the foregoing has been served by regular mail to Plaintiff, Eric K. Brooks, Inmate No. 582151, Tomoka Correctional Institution, 3950 Tiger Bay Road, Daytona Beach, Florida 32124.

s/ Hannah D. Monroe
Florida Bar Number 102762
Assistant City Attorney
City Attorney's Office
300 South Adams Street, Box A-5
Tallahassee, FL 32301
(850) 891-8554; Fax: (850) 891-8973
Hannah.Monroe@talgov.com
*Attorney for Defendant*
*Officer Damon Miller*

4

Exhibit E-4

**TALLAHASSEE POLICE DEPARTMENT**

(e.g., electronic cigarettes) in all COT owned or leased buildings, facilities and vehicles.

3. Officers hired after September 3, 1985, shall not smoke tobacco products on- or off-duty.

4. Officers hired after October 1, 1990 shall not smoke or otherwise use tobacco products on- or off-duty.

5. Officers hired prior to the dates previously mentioned who use tobacco products shall:

   a. Do so as inconspicuously as possible if on-duty, and

   b. Never use such products in any public or private place where prohibited by state law or city ordinance.

Y. Providing Address and Telephone Number

1. Members are required to have an operational telephone at which they can be contacted.

2. Promptly upon reporting for duty in a new work unit, members shall provide their correct residence address and telephone number to the immediate supervisor or other proper authority.

3. Members are responsible for reporting/updating changes in their address or telephone number(s) within 24 hours of the change, as follows:

   a. To their immediate supervisor,

   b. In the COT computer software allowing members to complete basic Human Resources transactions (i.e., PeopleSoft HR Self-Service system), and

   c. In the Department's time and attendance software (i.e., Telestaff system).

III. **ACTS OF MISCONDUCT**

The following acts of misconduct are unacceptable for members:

A. Abuse of Position

---

**Response to Request for Production**

Exhibit F-1

**TALLAHASSEE POLICE DEPARTMENT**

    b. The possession of a personal medication is warranted, and conforms to the mandates of Chapter 705 (Alcohol and Drugs), COT Administrative Policies and Procedures.

V. Compromising a Criminal or Traffic Case

    1. Members shall not interfere with the service of lawful process.

    2. Members shall not interfere with the attendance or testimony of witnesses through coercion, bribery, or other means.

    3. Members shall not attempt to have any traffic citation or notice to appear reduced, voided, or stricken from the court calendar without due cause.

    4. Members shall not take any action which will interfere with the efficiency or integrity of the administration of justice.

    5. Members who have knowledge of such interference by a member shall promptly inform a Department supervisor.

W. Unauthorized Use of Department Letterhead and Address

    1. Members shall not use Department letterhead, paper, envelopes, or postage for private or personal business.

    2. Members shall not send written correspondence out of the Department without proper authority.

    3. Members shall not use the Department as a mailing address for private or personal purposes with the exception that it may be used for a vehicle, vessel and trailer registration or driver's license for the member and family members living at the same address as the member.

X. Unauthorized Participation in Commercial Testimonials

    1. Members shall not permit their names or photographs to be used to endorse any product or service in any way connected with law enforcement without the permission of the Chief of Police.

    2. Members shall not, without the permission of the Chief of Police, allow their names or photographs to be used in any commercial testimonial alluding to their position or employment with the Department.

**Response to Request for Production**

Exhibit F-2

## TALLAHASSEE POLICE DEPARTMENT

### DEFINITIONS

**Bias Based Profiling**:  The selection of individuals based solely on a common trait of a group.  This includes, but is not limited to: race, ethnic background, gender, sexual orientation, religion, economic status, age, cultural group or other identifiable groups.

**Foreign National**:  For purposes of consular notification, any person who is not a citizen of the United States, including "aliens" who possess a United States "Green Card," and those illegally in the United States.  A foreign national claiming the United States as one country in their dual citizenship shall be treated exclusively as a citizen of the United States.

**Off-duty**:  When an officer is not engaged in on-duty or secondary employment activity.

**On-duty**:  When an officer is working their regular duty assignment or any special assignment compensated by the Department.

**Secondary Employment**:  Employment where an officer works for an entity other than the Department, and a condition of the employment is the actual or potential use of law enforcement powers by the employed police officer.

**Shall**:  Indicates the described action is mandatory.

**Should**:  Indicates the described action is not mandatory, but preferred.

### PROCEDURES

### I.    GENERAL GUIDELINES

A. When effecting arrests, officers shall ensure those rights mandated by the United States Constitution are provided to the arrested person.

B. When effecting arrests, officers shall obey the laws of arrest as outlined in FS Chapter 901, Arrests.

C. Officers shall not make any arrest decision based upon bias based profiling.

D. Officers shall handcuff all arrested persons (hands behind back) unless circumstances reasonably justify otherwise.

**Response to Request for Production**                                **COT-000002**

Exhibit G-1

## TALLAHASSEE POLICE DEPARTMENT

2. Not utilize any non-Department-approved firearm to make an arrest unless it is used to prevent the imminent great bodily harm to or death of themselves or another person.

D. Off-duty officers who make arrests shall summon on-duty officers as soon as practical.

E. Off-duty officers who make arrests shall ensure the appropriate arrest/booking paperwork is completed contemporaneous to the arrest.

F. Off-duty officers shall submit other required police reports within twenty-four (24) hours of the arrest, unless directed to do otherwise by an on-duty supervisor.

## IV.   ARRESTS WITHOUT A WARRANT

A. When making arrests without a warrant, officers shall comply with FS Chapter 901 and current federal and Florida case law.

B. Officers shall not enter a dwelling or structure to make a warrantless arrest absent a valid exception to the search warrant requirement.

## V.   ARRESTS WITH A WARRANT

A. Before making an arrest with a warrant, officers shall determine if:

1. The person to be arrested is the one for whom the warrant is issued, and

2. The warrant is valid.

B. Officers shall use reasonable diligence to ensure the person to be arrested is the person named in the warrant.  When in doubt, officers shall use simple and direct means of checking identification when such means exist (e.g., photographs, automated inquiries, fingerprint classifications, intelligence information).

C. Officers shall verify the validity of all Leon County arrest warrants through the Justice Information System (JIS).

D. Officers shall verify the validity of non-Leon County arrest warrants through FCIC/NCIC.

**Response to Request for Production**

COT-000007

Exhibit G-2

ERIC K. BROOKS # 582151
TOMOKA CORRECTIONAL INSTITUTION
3950 TIGER BAY ROAD
DAYTONA BEACH, FLORIDA 32124



MAILED FROM A STATE
CORRECTIONAL
INSTITUTION

US POSTAGE PITNEY BOWES

ZIP 32124   $ 002.60⁰
0000360581 AUG 07 2020

MAILED FROM
A STATE CORRECTIONAL
INSTITUTION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
OFFICE OF THE CLERK
III NORTH ADAMS STREET, SUITE 322
TALLAHASSEE, FLORIDA 32301-7717

**LEGAL MAIL**          **LEGAL MAIL**