## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**ERIC K. BROOKS,**

      **Plaintiff,**

**vs.**                    **CASE NO. 4:19-cv-00524-MW-MAF**

**D. MILLER,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Eric K. Brooks, an inmate proceeding *pro se*, initiated this civil rights action and was granted leave to proceed *in forma pauperis*. ECF Nos. 1, 5. This Cause is currently before the Court upon Defendant's Motion for Summary Judgment accompanied by exhibits. ECF No. 17.

After careful review for the reasons stated below, Defendant's Motion for Summary Judgment, ECF No. 17, should be granted; and the case should be dismissed.

### I.  Allegations of Plaintiff's Complaint, ECF No. 1

Plaintiff sues Defendant Miller, a Tallahassee police officer, in his individual and official capacities. ECF No. 1. Plaintiff alleges that on November 12, 2016, at approximately 3:18 p.m., he was standing "at 2509

Golf Terrance" with other people when Defendant drove to the location, "stepped out of his vehicle [and] demand[ed] to talk to whomever it was that drove the black KIA." Id., p. 5. Plaintiff claims that he attempted to walk away from the area where Defendant stopped him and asked for his identification. Id. Plaintiff claims he told Defendant "he had nothing to talk to him about and . . . did not know who was driving the vehicle." Id. According to Plaintiff, Defendant grabbed Plaintiff by the shirt, slammed him into the patrol vehicle, and handcuffed Plaintiff "so tight[ly] that sharp pain shot through his arms before lo[sing] all [circulation] in his [wrists] and arms." Id. Plaintiff maintains that Defendant illegally searched him and found drugs in his right pocket. Id.

Plaintiff claims he told Defendant that he needed medical attention because he thought his wrists were "broken or damaged." Id., p. 6. Instead, Defendant transported Plaintiff to the Leon County Jail. Id. Plaintiff claims that on arrival, he again complained of pain and was seen by a nurse at the jail who prescribed him Tylenol and ibuprofen. Id. Plaintiff makes no claim as to what type of treatment he should have received and presents no facts that he was at any later time diagnosed with any injuries. Id.

Plaintiff alleges he was charged with possession of cocaine and driving without a valid drivers' license, both of which were dismissed by the state attorney's office. Id. In sum, Plaintiff claims that Defendant violated his

constitutional rights by subjecting Plaintiff to a false arrest, using excessive force, and denying Plaintiff medical care. Id., pp. 7-9. As relief, Plaintiff seeks $1,750,000 in compensatory damages; $900,000 in punitive damages; and declaratory relief and injunctive relief stating Defendant violated Plaintiff's Fourth-, Eighth-, and Fourteenth Amendment rights. Id., pp. 10-11.

## II.  Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Accordingly, summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11th Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to present sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise show there are material issues of fact which demand a trial. Fed. R. Civ. P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987). The trial judge, at the summary judgment stage, does not weigh the evidence but rather determines whether there is a genuine issue for trial: "if the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin Cty., Ala. v. Purcell Corp., 971 F.2d 1557, 1563 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, supra).

The Supreme Court has stressed:

> [w]hen the moving party has carried its burden under rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

Matasushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

## III.   Defendant's Motion for Summary Judgment, ECF No. 17

Defendant states that he was on patrol when he observed Plaintiff driving a black KIA, park in front of 2516 Golf Terrance, exit the KIA, and walk toward other pedestrians in the area. ECF No. 17, p. 2. Defendant drove to the area, exited his vehicle, and had a consensual encounter with Plaintiff. Id. According to Defendant, he asked Plaintiff for his license, but Plaintiff stated he did not have one. Id. For this reason, because Defendant observed Plaintiff drive to the area and admitted he had no license, Defendant placed Plaintiff under arrest for driving without a valid drivers' license. Id., pp. 2-3. While conducting a search subject to Plaintiff's arrest, Defendant found crack cocaine in Plaintiff's jacket pocket. Id., p. 3.

Defendant read Plaintiff his Miranda[1] rights, but Plaintiff waived them and agreed to speak with Defendant. Id. Plaintiff admitted he received the cocaine and had never been issued a drivers' license. Id. Defendant confirmed with the Driver and Vehicle Information Database that Plaintiff did not have a license. Id. Defendant charged Plaintiff with no valid drivers' license and possession of cocaine and transported Plaintiff to the Leon County Jail. Id. The state later dismissed the charges in exchange for Plaintiff's guilty plea in an unrelated felony case. Id., pp. 3-4.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

Defendant maintains that the video evidence clearly refute Plaintiff's claims. Id., p. 4. The recordings prove that Defendant did not grab Plaintiff and slam him into the patrol vehicle; he did not place the handcuffs on Plaintiff too tightly; explained to Plaintiff how to keep comfortable in the handcuffs so his hands would not "go numb"; Plaintiff did not ask for medical attention; and there was no reason to seek medical attention because there was no injury. Id.

Defendant asserts that he is entitled to summary judgment as a matter of law and because there are no genuine disputes of material fact. ECF No. 17, p. 2.

## IV.   Plaintiff's Response, ECF No. 51.

Plaintiff submitted an unsworn response to Defendant's motion for summary judgment and presents new sets of facts. ECF No. 51, p. 2. Plaintiff did not present these facts in his complaint. See N.D. Loc. R. 5.7(B) (in civil rights cases, the plaintiff "must set out specific claims and supporting facts" in the complaint not in a reply memorandum). Plaintiff claims, after he was hand-cuffed, he freely admitted he had no valid driver's license and that his Miranda rights were read to him after the search. Id., p. 5. Plaintiff believes that driving without a valid license is a non-criminal traffic infraction; therefore, Defendant did not have the right to arrest him. Id., p. 7. Plaintiff

claims that the video shows that Defendant admitted if he had not found the drugs, he would have only issued Plaintiff a citation. Id., p. 8.

Plaintiff claims that Defendant did not move for summary judgment on Plaintiff's illegal search and seizure claims; therefore, Defendant waived his right to do so. Id., p. 5.

## V.   Discussion

A. The Video/Audio[2] Evidence Refutes Plaintiff's Account.

Before addressing Plaintiff's claims, a discussion of the video evidence is necessary. The video provides relevant context of the encounter between Defendant and Plaintiff. At approximately 3:13 p.m., two police cars, one of which belonged to Defendant, were in pursuit of a black KIA for several blocks. See DVD, 00:00-00:47. Eventually, Plaintiff, the driver of the black KIA, parked the car near a wooded area with a bench; and officers in their patrol vehicles stopped and parked a short distance behind the KIA. Id., 00:47. Plaintiff exited the car before police exited their vehicles, kept his back to the officers, walked toward the front of the car and then across to the right and away from the car. Id., 00:56. At least three pedestrians were in the area.

---

[2] Recorded evidence is available on the DVD submitted by Defendant as ECF No. 17-3, Exhibit 3. The first 8:25 minutes contains clear video and audio footage. From 08:25 through 50:52 and the end of the DVD, only audio is clear. For a moment at 50:53, video shows Plaintiff and Defendant at the jail. To maintain consistency, the term "video" is used throughout the Report.

Officers exited their vehicles, walked toward the front of the KIA, checked the area, and greeted the pedestrians. Id., 01:02-01:52. Defendant can be heard asking Plaintiff twice, "you got your drivers' license on you? … do you have a drivers' license"; and Plaintiff stated, "no, I don't have one." Id., 01:56. Defendant asked Plaintiff why he did not have a drivers' license but received no answer. Then, Defendant informed Plaintiff he was under arrest for not having a drivers' license, handcuffed him, and asked if he had anything in his pockets (guns, knives, or weapons) before he searched him; Plaintiff said "no." Id., 02:22-02:35.

At 3:17 p.m., Defendant walked with a handcuffed Plaintiff toward Defendant's police car and told Plaintiff he was the second person he arrested for driving the KIA. Id., 03:30-03:43. It is important to note that there is no indication that any force was used. Both Defendant and Plaintiff walk toward the patrol vehicle calmly; and Plaintiff makes no complaints and no injury is apparent. When the two arrived at the patrol vehicle, Defendant directed Plaintiff to turn around, asked Plaintiff about the contents of his pockets, and whether there was anything he needed to know about. Id., 03:44-03:54. Plaintiff responded, "no." Id. Defendant reached into Plaintiff's left pants pocket and pulled out a small item. Id., 03:44-03:52. Defendant checked Plaintiff's right pocket, pulled out another small package, opened it

and examined it, and then pulled out a pill container from the same pocket. Id., 03:52-04:38. Defendant then checked the pockets in Plaintiff's jacket. Id., 04:38-04:57. Other officers were present. Id., 05:04. Defendant reminded Plaintiff he had asked him whether he had anything in his pockets he needed to know about before the search only to find in the jacket pocket that "there's crack in there." Id., 05:22. Plaintiff responded, "damn, sure is" and "I didn't know it was in there." Id., 05:34. A second officer peered into the pocket and offered a latex glove to Defendant. Id., 05:30-05:44. A third officer also came to the area while Defendant continued to search Plaintiff's jacket pockets. Id., 05:44-06:37.

Defendant informed Plaintiff the reason for his arrest -- driving without a drivers' license *and* possession of cocaine -- and then read Plaintiff his Miranda rights. Id., 06:44-7:29. Plaintiff admitted to receiving the cocaine that was found on him and stated he did not want to upset Defendant. Id. Defendant picked up the items retrieved from Plaintiff's pockets; and they moved to the passenger side of the patrol vehicle out of sight of the dash camera. Id., 07:30. There is a time at which Defendant changed Plaintiff's handcuffs and gives him the following instructions to make him more comfortable:

> Put your hands straight above your head for me … up in
> the air … turn around for me…put it on there….put arms

> straight back up in there…put 'em down, turn around…when you sit in the car, a little trick put your hands facing that door over there so that way your hands don't go numb and try not to change it at all cause if you change it, it's gonna change up the way it's gonna feel…Anything I need to know about, …just let me know, and I'll get you anything else? …Alright, have a seat.

Id., 09:56-11:24. At no time did Plaintiff make any complaints of any injury or pain.

Some time later, Plaintiff pleaded with Defendant about the charges and going to jail. Defendant explained, "there is nothing I can do . . . I was going to give you a court date about your drivers' license, but you have cocaine on you, which is a felony. You have to go to jail." Id., 23:16. Defendant then asked Plaintiff several questions in order to process him including whether he was out on bond. Id., 27:10-28:00. Plaintiff again admitted he had never been issued a drivers' license. Id., 28:30. It is apparent from the video that Defendant transported Plaintiff to jail in the police car. At a certain point, Defendant asked Plaintiff if there was too much wind on him. Id., 31:00. The recording continues until Plaintiff's arrival at the jail. In total, the video exceeds fifty-two minutes. Plaintiff did not express any complaints of pain, injury, or discomfort to Defendant.

B. Plaintiff Fails to State a Claim of False Arrest and Illegal Search Because Probable Cause Existed.

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010). Plaintiff has the burden of demonstrating the complete absence of probable cause for an alleged false arrest. Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998) (citing Evans v. Hightower, 117 F.3d 1318, 1320 (11th Cir. 1997). The standard for determining the existence of probable cause is the same under both Florida and federal law. Id. "That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself." Marx v. Gumbinner, 905 F.2d 1503, 1507 (11th Cir. 1990). "Probable cause [to arrest] exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed." Id. at 1506 (citation omitted). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" Id. (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Probable cause must be judged not with a

clinical detachment but with a common-sense view to the realities of normal

life. Id.; see also Lee v. Geiger, 419 So. 2d 717 (Fla. 1st DCA 1982) (a police

officer does not have to conduct a perfect investigation); LeGrand v. Dean,

564 So. 2d 510 (Fla. 5th DCA 1990) (child victim eyewitness testimony

established probable cause); Doorbal v. State, 837 So. 2d 940 (Fla. 2003).

Consequently, the facts should not be viewed from a plaintiff's point of view

or as known to the plaintiff or to the court later in the case. Jones v. Cannon,

174 F.3d 1271, 1283, n. 4 (11th Cir. 1999).

"[T]he Constitution permits an officer to arrest a suspect without a

warrant if there is probable cause to believe that the suspect has committed

or is committing an offense." United States v. Lyons, 403 F.3d 1248, 1253

(11th Cir. 2005) (quoting Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)).

"For probable cause to exist, both federal and Florida law say that an arrest

must be objectively reasonable based on the totality of the circumstances."

Id. (citation omitted).

It is true that "when an officer, without reasonable suspicion or

probable cause, approaches an individual, the individual has a right to ignore

the police and go about his business . . . [a]nd any refusal to cooperate,

without more, does not furnish the minimal level of objective justification

needed for a detention or seizure . . . But unprovoked flight is simply not a

mere refusal to cooperate. Flight, by its very nature, is not going about one's business; in fact, it is just the opposite." Illinois v. Wardlow, 528 U.S. 119, 125 (2000) (internal quotations and citations omitted).

Here, Plaintiff alleged in his complaint that when Defendant arrived on the scene asking for the identity of the driver of the black Kia and asked for identification, Plaintiff attempted to leave. ECF No. 1, p. 5. However, Plaintiff's account is inaccurate. Police followed Plaintiff for several blocks before he parked the KIA, exited the car, and walked away from officers. DVD, 00:00-00:56. Officers had a clear view of Plaintiff in order to be able to identify him after exiting the car. When Defendant asked Plaintiff whether he had a drivers' license and Plaintiff responded, "no," probable cause was established; and Defendant arrested Plaintiff.

Despite Plaintiff's assertions, under Florida law, it is a criminal offense to drive a motor vehicle without a license. See Fla. Stat. § 322.34. Plaintiff admitted in his complaint and in his response that he attempted to leave the area when Defendant asked Plaintiff for identification. Plaintiff also admitted in his response that he told Defendant he did not have a valid drivers' license. Defendant also submitted a probable cause affidavit explaining his encounter with Plaintiff. ECF No. 17-1, pp. 1-5. Defendant claimed in the affidavit that because he saw Plaintiff drive to the area and Plaintiff admitted

to him that he did not have a valid license, he placed Plaintiff under arrest, and conducted a search incident to the arrest and found cocaine in Plaintiff's pocket. Id., p. 3. The affidavit is corroborated by the video. Probable cause existed for Plaintiff's arrest based on his own admission to Defendant, which was recorded.

This does not mean that Plaintiff was necessarily guilty of any crime, but it demonstrates that there was probable cause for the officer to arrest him -- enough to foreclose the false arrest claim under Section 1983. Ultimately, the state entered a *nolle prosequi* in the criminal case in exchange for Plaintiff's guilty plea in Leon County Case No. 2016CF3454. ECF No. 17-2, p. 2. However, this does not contradict a probable cause finding. Because probable cause existed for Plaintiff's arrest, he fails to state a claim for false arrest.

To the extent that Plaintiff claims that the search of his pockets was a violation of the Fourth Amendment and that Defendant failed to address the issue in his motion for summary judgment, Plaintiff's claim fails. Defendant clearly argues that Plaintiff "cannot establish any violation of his constitutional rights," he conducted a "lawful search incident to arrest," and "found an illegal substance – crack cocaine – on Plaintiff's person. . . [giving Defendant] probable cause to arrest Plaintiff for that violation as well." ECF

No. 17, pp. 7-9. This search does not give rise to a Fourth Amendment violation because the "search-incident-to-arrest" doctrine allows "a police officer who makes a lawful arrest [to] conduct a warrantless search of the arrestee's person and the area 'within his immediate control.'" Davis v. United States, 564 U.S. 229, 232 (2011).

Here, Defendant had already informed Plaintiff he was under arrest for driving without a license, asked Plaintiff whether he had anything in his pockets, conducted a proper search incident to an arrest, and found cocaine. Accordingly, Plaintiff fails to state a claim for an illegal search.

C. Plaintiff Fails to State a Claim of Excessive Force.

"A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis and internal quotation marks omitted); Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To prevail on such a claim brought under § 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." Townsend v. Jefferson Cty., 601 F.3d 1152, 1158 (11th Cir. 2010). See Franklin v. Curry, 738 F.3d 1246, 1250

(11th Cir. 2013) ("[d]eliberate indifference requires the following: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence").

To establish excessive force, the force must have been "sadistically and maliciously applied for the very purpose of causing harm." Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002). Evidence viewed in the light most favorable to the plaintiff must go "beyond a mere dispute over the reasonableness of the force used" and must "support a reliable inference of wantonness in the infliction of pain." Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987). "[A] good-faith effort to maintain or restore discipline' does not give rise to an Eighth Amendment violation . . . the malicious or sadistic application of force to cause harm does." Thomas v. Comstock, 222 F. App'x 439, 441-42 (5th Cir. 2007) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)). However, once a prisoner has been subdued, "[t]he use of force must stop when the need for it to maintain or restore discipline no longer exists." Skrtich v. Thornton, 280 F.3d 1295, 1304 (11th Cir. 2002) (citation omitted).

Eighth Amendment claims based on *de minimis* uses of physical force are not cognizable unless they involve force that is "repugnant to the conscience of mankind." Hudson, 503 U.S. at 8. Moreover, although a lack

of injury "is not conclusive about the presence or absence of constitutional violation [,] a lack of serious injury can illustrate how much force was actually used." Walker v. City of Orlando, 368 F. App'x 955, 956 n.1 (11th Cir. 2010) (internal citation omitted); see also Stephens v. Broward Sheriff's Office, 84 F. Supp. 3d 1327, 1337-38 (S.D. Fla. Dec. 10, 2014) (considering injury to the extent that it "inform[s] the Court as to the force used by the defendant during the course of the encounter."). While nominal damages may be appropriate in the absence of physical injury, that still requires the "violation of a fundamental constitutional right." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003).

Thus, a prisoner "who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (citing Hudson, 503 U.S. at 9). Such an encounter involving only *de minimis* force is "insufficient, as a matter of law, to state a constitutional violation." Bryan v. Spillman, 217 F. App'x 882, 886 (11th Cir. 2007). Not "every malevolent touch . . . gives rise to a federal cause of action." Hudson, 503 U.S. at 9. Indeed, federal courts "have routinely held that a single push, shove, punch, or blow . . . simply does not rise to constitutional dimensions." Neal v. Miller, 778 F. Supp. 378, 382 (W.D. Mich. 1991).

Here, the shove Plaintiff described in his complaint amounts to a *de minimis* use of force. Plaintiff alleged Defendant grabbed Plaintiff by the shirt, slammed him into the patrol vehicle, and handcuffed him "so tight[ly] that sharp pain shot through his arms before lo[sing] all [circulation] in his [wrists] and arms." ECF No. 1. However, the video refutes Plaintiff's claims. Plaintiff was not slammed into a patrol vehicle. The video clearly shows both Defendant and Plaintiff walking calmly to the patrol vehicle without any altercation, resistance, or force. Moreover, as evidenced, Defendant gave Plaintiff advice on how to be most comfortable in the handcuffs and to let him know if he needed anything. Plaintiff made no complaints of any pain and there was no sign of any injury at any time that Plaintiff was in Defendant's custody. Accordingly, Plaintiff fails to state a claim that Defendant used excessive force.

D. Plaintiff Fails to State a Claim of Deliberate Indifference to a Serious Medical Need.

Delayed or denied access to medical care for inmates resulting in physical or mental injury constitutes a violation of constitutional rights. Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). To sufficiently state a claim, a plaintiff must allege facts that plausibly show: (1) the plaintiff had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) there is a causal connection between that indifference and the plaintiff's

injury. <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1306-07 (11th Cir. 2009). The medical need must be "one that, if left unattended, pos[es] a substantial risk of serious harm." <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations and internal quotation marks omitted). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" <u>McElligott v. Foley</u>, 182 F. 3d 1248, 1254 (11th Cir. 1999).

A deliberate-indifference claim contains both an objective and a subjective component. <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004). First, the need must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," which "if left unattended, poses a substantial risk of serious harm." <u>Id</u>. Second, the defendant must have (1) subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) by conduct that is more than mere negligence. <u>Id</u>. (citing <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999)). Deliberate indifference is the reckless disregard of a substantial risk of serious harm. <u>Farmer</u>, 511 U.S. at 835-36.

Here, there was no use of excessive force, much less any other force that would result in any injury. As evidenced by the recording, Plaintiff did

not make any complaints to Defendant that he had any injury, pain or discomfort that would have put Defendant on notice that Plaintiff required a doctor's attention. In short, Defendant did not have any subjective knowledge that there was any risk of serious harm to Plaintiff. As narrated above, Defendant advised Plaintiff on how to remain comfortable in the handcuffs so that his hands would not go numb, asked Plaintiff if he needed anything, and told Plaintiff to let him know if he needed anything. Accordingly, Plaintiff fails to state a claim for deliberate indifference to a serious medical need.

E. Defendant is Entitled to Qualified Immunity.

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The court considers: "whether the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the alleged transgression. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Keith v. Dekalb Cty., 749 F.3d 1034 (11th Cir. 2014). In short, Plaintiff must show that Defendant's actions violated a constitutionally protected right and the right was "clearly established" at the time.

Dismissal based on qualified immunity is proper "when the complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). While the Court is required to accept the allegations in the complaint as true, once a defendant raises a qualified immunity defense, the burden of persuasion belongs to the Plaintiff. Id. The Court is not required to accept Plaintiff's legal conclusions as true.

As narrated above, Defendant did not conduct a false arrest or an illegal search. Defendant did not use excessive force on Plaintiff in order to arrest him or at any time during the encounter. Finally, Plaintiff did not have any serious medical need, was not injured and did not ask Defendant for medical care. Because Defendant did not violate any of Plaintiff's constitutional rights, Defendant is entitled to qualified immunity.

Plaintiff's accounting of the incident is blatantly contradicted by the record, so much so, that no reasonable jury could believe it. Thus, the Court cannot adopt Plaintiff's version of the facts for purposes of summary judgment. Scott, 550 U.S. at 380. Without evidence on each essential element of his claims, at this stage, Plaintiff cannot solely rely on his complaint. There are no genuine issues as to any material fact; and the

motion for summary judgment is properly supported. Accordingly, Defendant is entitled to summary judgment.

## VI.   Conclusion and Recommendation

For the reasons stated above, it is respectfully RECOMMENDED that Defendants' Motion for Summary Judgment, ECF No. 17, be GRANTED; and that the case be DISMISSED for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2). Finally, it is recommended that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this case was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IN CHAMBERS at Tallahassee, Florida, on December 21, 2020.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).