# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**ERIC K. BROOKS,**

    **Plaintiff,**

vs.                                                          Case No. 4:19cv524-MW-MAF

**D. MILLER,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

In January 2021, Defendant's motion for summary judgment was granted and this case dismissed for failure to state a claim. ECF No. 54. Judgment was entered in Defendant's favor on all three of Plaintiff's claims. ECF No. 55. Plaintiff filed a notice of appeal, ECF No. 56, and the Eleventh Circuit Court of Appeals remanded as to Plaintiff's excessive force claim. ECF No. 75. That Court concluded that Defendant Miller was not entitled to qualified immunity on the excessive force claim, but that he had probable cause to arrest Plaintiff and, because the arrest was lawful, so was the incidental search of Plaintiff's pockets. ECF No. 74 at 24-25, 28-29. The Court also found that qualified immunity was proper as to

Plaintiff's claim that Defendant Miller was deliberately indifferent to Plaintiff's medical needs. *Id.* at 29.

Upon remand, the parties were provided time to conduct discovery, and thereafter, the case was set for trial. ECF Nos. 78, 83, and 91. On the eve of trial (September 10, 2024), Plaintiff's counsel filed a notice of settlement. ECF No. 95. The case was dismissed pursuant to their settlement agreement on September 11, 2024. ECF Nos. 96-97.

Plaintiff filed a pro se letter on October 2, 2024, ECF No. 98, claiming that the "settlement was basically a forced settlement" and that he accepted it because he "was afraid that [his] life may be in danger according to a statement made" to him by his attorney, Gary Printy. *Id.* at 1. Plaintiff said that Mr. Printy told him he had a "big target" on his back, and that if he were the Plaintiff, he would get his girlfriend, take the settlement money, and leave town. *Id.* Plaintiff said he took that as a "threat" on his "life involving Tallahassee Police Department." *Id.* Plaintiff then complained that the settlement agreement "was breached" because he was supposed to "have been released" from his pre-trial detention at the Leon County Jail and the charges pending against him were to be dropped. *Id.* Plaintiff said that the charges were not dropped and he was still

incarcerated on those charges. *Id.* Plaintiff requested the settlement agreement "be withdrawn," that he be provided another lawyer to represent him in this case, and an injunction be entered against the Tallahassee Police Department. *Id.* at 2.

Defendant filed a response in opposition to Plaintiff's letter. ECF No. 99. Defendant advised that Plaintiff led the settlement conference over several hours and an agreement was reached. *Id.* at 1. Plaintiff was presented a "General Release," which Plaintiff signed after reviewing it with his attorney. *Id.* Defendant states that the agreement waived Plaintiff's claims arising from the facts of this case as well as four other arrests (June 3, 2022, August 15, 2023, July 14, 2024, and August 6, 2024). *Id.* at 1-2. Defendant contends that no representation was made to Plaintiff concerning his release from jail and that the "City had no control or involvement over his incarceration or pending criminal charges." *Id.* at 2. According to Defendant, the "General Release made no reference to Plaintiff's incarceration or release from jail." *Id.* Defendant advised that counsel for Plaintiff picked up the settlement check on September 12, 2024, and it "cleared" the bank on September 13, 2024. *Id.*

The case was set for a hearing, ECF No. 100, and a writ issued for Plaintiff to provide testimony in person. ECF No. 101. At the hearing held on October 8, 2024, both Plaintiff and his attorney were sworn and provided testimony. Defendant provided argument, but also provided the Court with a copy of the "General Release" at issue in this case. The Release was admitted into evidence as Exhibit 1 without objection.

The Release makes the following pertinent and simplified[1] statements: a monetary sum payable to Mr. Printy's Trust Account would be issued, Plaintiff would release and forever discharge the City from all claims arising out of the facts and circumstances set forth in this case, as well was "any claims arising from June 3, 2022, August 15, 2023, July 14, 2024, and August 6, 2024 arrests." Ex. 1, pg. 1. Plaintiff agreed to dismiss with prejudice all claims in this action, and it was understood that acceptance of the General Release was not "an admission of liability on the part of any party." *Id.* at 2.

Importantly, the Release stated that "no promise or agreement not expressed herein has been made," and that the Release was "not executed

---

[1] It is unnecessary to quote the full language of the legal agreement; layman's terms are sufficient to convey it's meaning. Ex. 1.

in reliance upon any statement or representation made by the City." *Id.* Rather, the Release was based upon the payment of the agreed upon sum of money. Ex. 1 at 2. The Release concluded with the following language:

> . . . that the terms of this General Release have been completely read; and that the undersigned fully understands the tenor and effect of the release and indemnification agreement; having the benefit of counsel of the undersigned's own attorney, and that the terms of this General Release have been given voluntarily.

Ex. 1 at 3. Plaintiff signed the Release on September 10, 2024. *Id.*

Although Plaintiff claimed in the hearing that he understood he would be released from detention, he also acknowledged that the City has no control over the State Attorney's Office and the dismissal of criminal charges. Plaintiff tried to argue that "some people''s arms are very long and sometimes they get what they want." Yet Plaintiff admitted that counsel for the Defendant told him, "We don't have control over what they do, [the State Attorney's Office] but we're going to reach out." There was no verbal agreement made to dismiss charges or release Plaintiff from detention, only to "reach out." Plaintiff cannot legally claim that the Release was breached because he was not released on bond.[2] Plaintiff

---

[2] It was revealed at the hearing that Plaintiff had a hearing in his criminal case on the day after the settlement conference. The state court did not release Plaintiff on

said he could read English, that he read the agreement, and that he signed it. He has not pointed to a single clause from the General Release that was breached because it did not address the dismissal of his criminal charges or his release from jail.

Plaintiff argues that although he signed the Release, it was not done "knowingly." However, Plaintiff's admissions in the hearing are fatal to that argument. Plaintiff said, "I know you can't guarantee anything." He also said that he "didn't really think they could reach out" and demand his charges be dismissed. It became apparent that Plaintiff was seeking to be released from his settlement agreement because he was not released on bond in his state criminal proceeding. Plaintiff hoped it would happen, but it did not. The reality is - attorneys for the Defendant have no control over a state court judge's decision about bond, and have no involvement in that process. Plaintiff acknowledged those facts.

However, Plaintiff continued to argue that the Release should be withdrawn as "unknowing." The problem for Plaintiff is that when he was questioned about when he felt the Release had been violated - if it

---

bond because he was arrested on a second charge while he was out on bond, thus violating the terms of his release.

Case No. 4:19cv524-MW-MAF

happened right after his bond hearing - Plaintiff said he knew "bond was going to be denied."  Those known and anticipated circumstances do not negate the agreement reached by the parties.  Importantly, Plaintiff signed the Release after reading it and discussing it with counsel.  Plaintiff said that at a later time he "went back and took [his] time and read" the Release.  While later reflection may result in "buyer's remorse," that is not a legal basis upon which to relieve Plaintiff of the agreement he reached.  The fact is, Plaintiff concedes he reread the agreement and understood it's terms, which did not include any provision regarding his release from jail.  The agreement was simple, clear and understandable, and Plaintiff had previously entered into a settlement agreement in another case with Mr. Printy as his counsel.  Plaintiff was no stranger to this process and, after reviewing the Release, never asked for any changes.  Plaintiff cannot use his own lack of diligence at the time of signing the General Release as a basis for undoing the Release.

     Plaintiff argued that he signed the agreement because he felt like his life was in danger as a result of a conversation he had with his attorney.  That conversation is not in dispute.  Mr. Printy testified that he told Plaintiff this was a "good deal," that Plaintiff had been arrested many times, was

living in the same place, and had a target on his back. Counsel advised Plaintiff to take the money, go live with his brother (who lived in another state) and girlfriend, and start over somewhere else. Plaintiff was not threatened or coerced. That is clear because Plaintiff admitted that counsel did not tell him anything he did not already know. Plaintiff would not have felt any more duress merely because his counsel recognized the reality of his situation.

 Plaintiff's expectations for release from pre-trial detention were not met, but Defendant and his counsel did not violate any term of the Release. The agreed upon funds were surrendered to Plaintiff's counsel, and that was all the Release required of Defendant or his counsel. Plaintiff's motion to vacate the settlement agreement should be denied.

 Plaintiff's request for an injunction against the Tallahassee Police Department should also be denied. All that Plaintiff requested was an injunction which would require the Tallahassee Police Department – a non-party to this case – to abide by the law. "Obey-the-law" injunctions are unenforceable and invalid. <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1200 (11th Cir. 1999); <u>S.E.C. v. Smyth</u>, 420 F.3d 1225, 1233 (11th Cir. 2005).

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's motion to withdraw the settlement agreement, be provided another lawyer to represent him, and enter an injunction against the Tallahassee Police Department, ECF No. 98, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 9, 2024.

S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**